UNITED STATES of America,
Plaintiff-Appellee,

v.

Antonio Pino PALAFOX,
Defendant-Appellant.

No. 83–1036.

United States Court of Appeals,
Ninth Circuit.

Submitted Oct. 1, 1984.

Decided June 24, 1985.

Poole, Circuit Judge, with whom Sneed, Circuit Judge, joined, filed a dissenting opinion.

Nelson, Circuit Judge, with whom Sneed, Circuit Judge, joined, filed a dissenting opinion.

David F. Levi, Sacramento, Cal., for plaintiff-appellee.

James M. Fallman, Fallman & Janof, Sacramento, Cal., for defendant-appellant.

Before BROWNING, Chief Judge, GOODWIN, SNEED, SCHROEDER, FLETCHER, PREGERSON, ALARCON, POOLE, NELSON, NORRIS, and REINHARDT, Circuit Judges.

SCHROEDER, Circuit Judge.

Antonio Pino Palafox appeals from his conviction on one count of possession with intent to distribute a controlled substance and one count of distribution of a controlled substance under 21 U.S.C. § 841(a)(1). The charges stem from a meeting in a parking lot where Palafox intended to sell a package of heroin to an undercover agent. The agent asked Palafox for a sample of the heroin, took a small quantity from the package and returned the package to Palafox. Almost immediately thereafter agents arrested Palafox. He was charged with distribution of the .12 gram sample and with possession of the remaining 124.58 grams with intent to distribute. Upon conviction, he was sentenced to concurrent terms of five years on each count.

Palafox argues in this appeal that because only one sale was contemplated and both the possession and the distribution were part of the same unconsummated transaction, he should not have been tried on both counts. He asks that we reverse his convictions and order the government to retry him on only one of the charges.

Palafox relies on certain language in decisions of this and other circuits involving convictions for possession with intent to distribute and actual distribution of the same drugs in one transaction. *See, e.g.,*

*United States v. Oropeza,* 564 F.2d 316 (9th Cir.1977), *cert. denied,* 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 788 (1978); *United States v. Olivas,* 558 F.2d 1366 (10th Cir.), *cert. denied,* 434 U.S. 866, 98 S.Ct. 203, 54 L.Ed.2d 142 (1977). He recognizes, however, that none of these decisions compel adoption of his position. Rather, the cases upon which he relies approve of the prosecution for both possession with intent and distribution but hold that in the sentencing phase, the defendant should receive only one punishment. In the alternative, therefore, he argues that he should not have been sentenced on both counts.

The government relies upon our decision in *United States v. Mehrmanesh,* 682 F.2d 1303 (9th Cir.1982). It argues that since the defendant completed the distribution of the sample and retained possession of the remainder with the intent to make a subsequent distribution, he committed two separately punishable offenses.

*Mehrmanesh,* however, involved two distributions. The first was the giving of a sample and the second was the delivery, several hours later, of the remainder to a different person at a different place. Mehrmanesh lived in Phoenix and arranged for the sale of a quantity of drugs in Tucson. One of Mehrmanesh's men and an undercover agent left Phoenix with the drugs to make the delivery to another undercover agent in Tucson. On the way, and unbeknownst to Mehrmanesh, the undercover agent asked Mehrmanesh's courier for a sample, and he complied with the request. That day they delivered the remainder in Tucson. Mehrmanesh was charged and convicted with aiding and abetting both the delivery in Tucson, which he helped plan, and the giving of the sample, about which he knew nothing.

On appeal, the panel majority rejected his argument that the only punishable offense was the aiding and abetting of the sale in Tucson. The majority held that the statute covers distributions and is not limited to sales. *Id.* at 1305–07. The majority also rejected the contention that, because

Mehrmanesh was not even aware of the sample distribution, there was insufficient evidence to convict him of aiding and abetting it. It went on to hold, in effect, that one who arranges a sale can be punished separately for the distribution of a sample which occurs after the sale is arranged and before it is consummated. *Id.* at 1307–09.

Because the government recognizes that *Mehrmanesh* is at the very least factually distinguishable, it takes an alternative position similar to that taken by the appellant. The government therefore argues that if there are not two separately punishable offenses, we should remand for resentencing.

■ The district court apparently wanted to impose only one punishment but felt bound by *Mehrmanesh* to impose punishments on each count. We granted en banc review in order to resolve the confusion. We hold, in line with the alternative arguments of both sides, that where the defendant distributes a sample and retains the remainder for the purpose of making an immediate distribution to the same recipients at the same place and at the same time, verdicts of guilty may be returned on both counts but the defendant may be punished on only one.[1]

This conclusion flows from three sources of legal authority. The first is the statute under which the appellant was convicted, the Comprehensive Drug Abuse Prevention and Control Act of 1970 ("Drug Act"), and its legislative history. The second is the United States Supreme Court's interpretation of an analogous statute, the Federal Bank Robbery Act, 18 U.S.C. § 2113. The third is the line of Federal Court of Appeals decisions under the Drug Act in factual situations most analogous to this one.

■ Our examination of the statute and its history underscores the strong congressional intent to criminalize all aspects of drug trafficking, and it compels us to reject an approach which focuses on sales or commercial transactions. *See Mehrmanesh*, 682 F.2d at 1306–07; *United States v. Pruitt*, 487 F.2d 1241, 1245 (8th Cir.1973). Palafox is charged with violating section 841(a)(1) of the Drug Act. The section provides:

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;

21 U.S.C. § 841(a)(1). Congress fixed the maximum punishment for conviction of possession with intent to distribute at fifteen years, with a possible fine of $25,000, 21 U.S.C. § 841(b)(1)(A).[2] It fixed the same maximum punishment for distribution. *Id.* Congress indicated thereby that the offenses were equally serious and should be treated with equal severity. The Drug Act attacks illegal drug traffic by making the price for drug participation in any aspect prohibitive. H.R.Rep. No. 91–1444, 91st Cong., 2d Sess., *in* [1970] U.S.Code Cong. & Ad.News 4566 *passim; cf. Pruitt*, 487 F.2d at 1245 ("Congress undoubtedly intended by this new Act to make an all-out attempt to combat illicit drugs by subjecting any individual who knowingly participates in the distribution to substantial, and in some cases severe, penalties....").

Congressional intent to penalize all aspects of the unauthorized use of controlled substances was emphasized by the Eighth Circuit in *Pruitt*, when it stated that the Drug Act is "no longer restricted to the

---

**1.** As explained more fully in our discussion of sentencing, we affirm the judgment of conviction on one count and direct the district court to vacate and stay both the imposition of sentence and entry of judgment of conviction on the other count. This is to ensure that appellant receives a single punishment without the direct or collateral consequences of conviction on a second count. Although Judge Poole's dissenting opinion characterizes our holding as permitting "two convictions," the appellant's record will reflect only one.

**2.** The penalty provisions applicable to this case are those which were in effect before the Controlled Substances Penalties Amendments Act of 1984, 98 Stat. 2068 (codified at 21 U.S.C. 841(b) ), increased the penalties.

narrower concepts of buy and sell, but all inclusive in covering the entire field of narcotics and dangerous drugs in all phases of their manufacturing, processing, distribution and use." 487 F.2d at 1245; *see also United States v. Gomez,* 593 F.2d 210, 213 (3d Cir.) (en banc) (Congress intended to proscribe all drug activity in enacting the Drug Act), *cert. denied,* 441 U.S. 948, 99 S.Ct. 2172, 60 L.Ed.2d 1052 (1979).

Appellant's position that he could be prosecuted for only one offense and that the government must elect to prosecute either the distribution or the possession with intent to distribute, is contrary to this congressional intent. *Id.* For this reason, the circuits that have considered this contention have rejected it. *United States v. Gonzalez,* 715 F.2d 1411, 1412 (9th Cir. 1983) (the companion case to this one); *United States v. Cortes,* 606 F.2d 511, 512 (5th Cir.1979); *see also United States v. Woods,* 568 F.2d 509, 511–12 (6th Cir.) (election not required), *cert. denied,* 435 U.S. 972, 98 S.Ct. 1614, 56 L.Ed.2d 64 (1978). This appellant was therefore properly prosecuted for two component offenses of one intended sale.

The next issue is whether the appellant may be punished for two crimes after he has been found guilty of two such component offenses. We are guided here by the United States Supreme Court's interpretation in *Prince v. United States,* 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), of the Federal Bank Robbery Act, 18 U.S.C. § 2113.[3] In the Federal Bank Robbery Act, as in the Drug Act, Congress created separate offenses, i.e., entry with intent to rob, and robbery, out of what could have been described as one criminal undertaking. *See Prince,* 352 U.S. at 323, 77 S.Ct.

at 404, 1 L.Ed.2d 370. The Supreme Court in *Prince* upheld prosecution and findings of guilt on multiple counts but permitted punishment for only one. *Id.* at 329, 77 S.Ct. at 407, 1 L.Ed.2d 370.

*Prince* came to the Supreme Court because of a conflict among the circuits. The Fifth Circuit in *Prince* itself had held two sentences were appropriate, *Prince v. United States,* 230 F.2d 568 (5th Cir.1956), *rev'd,* 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957); other circuits had held only one was appropriate. *Compare Simunov v. United States,* 162 F.2d 314 (6th Cir.1947) (statute permits only one sentence) *with Rawls v. United States,* 162 F.2d 798 (10th Cir.1947) (multiple sentences allowed) *and Durrett v. United States,* 107 F.2d 438 (5th Cir.1939) (same). *See generally Prince,* 352 U.S. at 324 n. 3, 77 S.Ct. at 405 n. 3, 1 L.Ed.2d 370. No circuit had adopted the theory appellant urges in this case that the defendant could be prosecuted for only one offense. In *Prince,* the Supreme Court held that Congress created multiple offenses in connection with the same robbery, but that it did not intend to impose multiple punishments.

The Supreme Court reviewed the legislative history regarding the establishment of separate offenses—robbery and acts which fall short of a completed robbery—with the same maximum punishment for each offense. It held that in creating the offenses "there was no indication that Congress intended also to pyramid the penalties." 352 U.S. at 327, 77 S.Ct. at 406, 1 L.Ed.2d 370. Hence, it reasoned that Congress did not intend, by making entry of the bank a separate offense, to multiply the maximum twenty-year sentence for robbery of the bank by another twenty years for the ini-

---

**3.** 18 U.S.C. § 2113 provides in relevant part:
(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or
Whoever enters or attempts to enter any bank, credit union, or any savings and loan

association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny—
Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

tial entry. The Court stressed in *Prince* that Congress's intent in criminalizing each step leading to a robbery was to punish, and punish severely, the person who embarks upon a robbery but is frustrated before completion. Congress did not intend to make "drastic changes in authorized punishments." *Id.* at 328, 77 S.Ct. at 407, 1 L.Ed.2d 370. The Court went on to state:

> We hold, therefore, that when Congress made either robbery or an entry for that purpose a crime it intended that the maximum punishment for robbery should remain at 20 years, but that, even if the culprit should fall short of accomplishing his purpose, he could be imprisoned for 20 years for entering with the felonious intent.

*Id.* at 329, 77 S.Ct. at 407, 1 L.Ed.2d 370 (footnote omitted). The Court remanded for resentencing.

The Supreme Court followed *Prince* in *United States v. Gaddis,* 424 U.S. 544, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1976). There the Court, citing *Prince,* left standing only one of multiple sentences imposed in a prosecution for component offenses of bank robbery. *Gaddis,* 424 U.S. at 549 n. 12, 96 S.Ct. 1023 n. 12, 47 L.Ed.2d 222.

In this case, as in *Prince,* the defendant committed and was charged and convicted of two criminalized steps of one transaction. We conclude that the Supreme Court's reasoning in *Prince* should apply, and the district court should have imposed only one punishment.

Our conclusion that *Prince* should apply and that the defendant may be subjected to only one punishment is supported by the Drug Act decisions in analogous situations. All six of the circuits that have considered multiple sentences for a distribution of a controlled substance and the possession of that substance with intent to distribute have viewed the *Prince* rationale as the controlling authority. All, including our own, have held that where a single act of distribution forms the basis for both the charge of distribution and the charge of possession with intent to distribute, the

government may prosecute and the defendant may be found guilty of both charges, but the court may impose only one sentence. *United States v. Oropeza,* 564 F.2d 316 (9th Cir.1977), *cert. denied,* 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 788 (1978); *United States v. Gomez,* 593 F.2d 210 (3d Cir.) (en banc), *cert. denied,* 441 U.S. 948, 99 S.Ct. 2172, 60 L.Ed.2d 1052 (1979); *United States v. Hernandez,* 591 F.2d 1019 (5th Cir.1979) (en banc); *United States v. Olivas,* 558 F.2d 1366 (10th Cir.), *cert. denied,* 434 U.S. 866, 98 S.Ct. 203, 54 L.Ed.2d 142 (1977); *United States v. Stevens,* 521 F.2d 334 (6th Cir.1975); *United States v. Curry,* 512 F.2d 1299 (4th Cir.), *cert. denied,* 423 U.S. 832, 96 S.Ct. 55, 46 L.Ed.2d 50 (1975); *United States v. Atkinson,* 512 F.2d 1235 (4th Cir.1975).

Following the Supreme Court's interpretation in *Prince* of the Federal Bank Robbery Act, the dominant theme in all of these federal Courts of Appeals' decisions under the Drug Act is a simple one: when more than one offense arises under § 841(a)(1) from a single criminal undertaking involving drugs, and each offense is committed at virtually the same time, in the same place, and with the same participants, the punishments should not be compounded. Thus, in *Gomez,* the Third Circuit declared that "sentences cannot be imposed for both the offense of distribution and the offense of possession with intent to distribute when both are charged and proved to have taken place at the same time." 593 F.2d at 217. The Sixth Circuit, in *Stevens,* emphasized that it was the single act of distribution that gave rise to prosecution for both the distribution and the possession with intent to distribute. 521 F.2d at 337. The Tenth Circuit in *Olivas* is in accord, 558 F.2d at 1368, and our own opinion in *Oropeza* stressed that "[t]he circumstantial evidence on which their possession convictions rest was identical to the evidence supporting their distribution convictions." 564 F.2d at 324. The same theme sounds with equal clarity in this case.

This case, however, factually differs in one respect from the other cases of multiple prosecution for distribution and possession with intent. Here, the charge of distribution is based on the distribution of the sample, and the charge of possession is based on the possession of the remainder with intent to make the immediate sale. However, the meeting with the agent, the giving of the sample and the possession of the remainder were all directed toward consummation of one criminal undertaking. Since the possession and the distribution occurred at the same time, in the same place, and with the involvement of the same participants, there should, as in the other cases, be only one punishment.

We stress that the delivery of a sample may well be a separately punishable offense in different circumstances. For example, an individual on the street corner who hands a sample to a passerby and who possesses the remainder with the intent to distribute it to others should receive multiple punishments, just as an individual should be punished if he makes distributions, sample or otherwise, to two different individuals as part of two separate transactions. Insofar as *Mehrmanesh* held that one involved in an ultimate distribution is always separately punishable for a preceding sample distribution, however, it is overruled. The general rule under § 841(a)(1) is, consistent with *Prince*, that where the defendant is convicted of multiple criminal steps leading to the same criminal undertaking, only one punishment should be imposed.

Permitting separate punishments in the present case could lead to potentially ludicrous results. Government agents, for example, could ask for repeated samples, and turn one intended delivery into a theoretically infinite number of crimes, each punishable with a maximum of fifteen years. Such results were not intended under a statute criminalizing the various steps involved in one criminal undertaking. *See Prince*, 352 U.S. at 328, 77 S.Ct. at 406–07, 1 L.Ed.2d 370. The defendant in this case, therefore, should not receive multiple punishments for steps in what in fact amounted to one frustrated delivery of drugs.

### Manner of Sentencing

Since we hold that the district court should impose only one sentence based upon two offenses, we should give some guidance on the sentencing process in cases involving component offenses under the Drug Act. A problem could arise, for example, if the district court imposed a sentence on one count and dismissed the other at the time of sentencing or even earlier. The defendant then would escape punishment altogether if the sentenced count were subsequently reversed on appeal or collateral attack.

The State of California has given great attention to this and related problems which may arise in connection with the imposition of single punishments when a defendant has been found guilty of multiple offenses. California has enacted a statute which requires that a single punishment be imposed in every situation in which "[a]n act or omission ... is made punishable in different ways by different provisions of [the criminal] code...." Cal. Penal Code § 654 (West 1970 & Supp.1984). Because of the vast array of situations to which this statute might apply, *see generally* 2 B. Witkin, California Crimes §§ 948–964 (1963 & Supp.1983), California has adopted a rule to ensure that the defendant receives an appropriate sentence. Rule 449 of California Rules of Court provides that the execution of sentence on all but one count be stayed pending appeal, with the stay becoming permanent when the sentence not stayed is completed. The rule is derived from the decision of the California Court of Appeal in *People v. Niles*, 227 Cal.App.2d 749, 39 Cal.Rptr. 11 (1964), where the reasons for it are fully explained.

The California experience is instructive where, as here, implementation of congressional intent calls for imposition of one punishment in the context of two offenses. Staying execution of sentence on one count

goes far toward ensuring that the defendant is punished, but punished only once, and for no more than the maximum set for that offense of which he is found guilty which carries the greatest maximum penalty.

▮ If, however, as apparently contemplated under the California rule, judgment of conviction is entered on both offenses at the time of original sentencing, the defendant could at least arguably be subject to additional, collateral punitive effects of the second conviction. This problem can be avoided by staying both the sentence and entry of judgment of conviction on all but one count in prosecutions for component offenses under the Drug Act. Such a procedure follows the directive of *Prince* to avoid multiple punishments. It avoids both the punitive collateral effects of multiple convictions as well as the direct effects of multiple sentences. *See Ball v. United States*, —— U.S. ——, 105 S.Ct. 1668, 1673–74, 84 L.Ed.2d 740 (1985). Our conclusion is consistent with the Fifth Circuit's in *United States v. Phillips*, 664 F.2d 971, 1039 (5th Cir.1981), *cert. denied*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982), that component drug offenses constituted one, not two, predicate acts under the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968. In prosecutions for component drug offenses, sentence and entry of judgment of conviction therefore should be stayed on all but one count.

### Palafox's Other Contentions

▮ Palafox contends that the use of the word conspiracy in the jury instructions, when no conspiracy was charged, was confusing. This claim is identical to that of appellant's co-defendant in *United States v. Gonzalez*, 715 F.2d 1411, 1412 (9th Cir. 1983). Our holding that, in the absence of any showing of prejudice, there was no reversible error is controlling. There was no showing of prejudice here or in *Gonzalez*.

▮ Palafox also argues as a matter of law that he was entitled to an acquittal because he was entrapped. Palafox was required to present " 'undisputed testimony making it patently clear' that he was an 'otherwise innocent' person in whom the government implanted the criminal design." *United States v. Abushi*, 682 F.2d 1289, 1297 (9th Cir.1982) (quoting *United States v. Rangel*, 534 F.2d 147, 149 (9th Cir.), *cert. denied*, 429 U.S. 854, 97 S.Ct. 147, 50 L.Ed.2d 129 (1976)). Appellant did not come close to meeting this standard.

We therefore remand with instructions to the district court to vacate and stay the entry of judgment and the imposition of sentence on one count. The stays are to become permanent upon service of the sentence on the remaining count. The judgment is otherwise affirmed.

POOLE, Circuit Judge, with whom SNEED, Circuit Judge, joins, dissenting.

The majority correctly holds that a defendant who distributes a sample of narcotics from a bulk amount which he retains intending to make a further distribution to the same recipients commits and may be convicted of two crimes. I part company, however, with the majority's further conclusion that such a defendant may be sentenced on only one crime.

This was a clear and relatively uncomplicated case to which the majority has applied convoluted and contradictory reasoning and from which it has distilled a rule that when Congress has created two distinct and separate criminal offenses—possession with intent to distribute and distribution—a defendant may be convicted of both but may be sentenced on only one.

Palafox was charged and convicted under an indictment alleging that he violated the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 841(a)(1) (the Drug Act), in that he (1) possessed a controlled substance with intent to distribute it and (2) he did distribute a controlled substance. The section in question provides:

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;

In February, 1982, an agent of the Drug Enforcement Agency of the Department of Justice, Special Agent Edward Cazares, received an unexpected telephone call at his Sacramento office from an inmate at Terminal Island Federal Correctional Institute in San Pedro, California who introduced the agent to appellant Palafox as a prospective heroin buyer. The agent gave Palafox the number of an undercover telephone at the Sacramento Regional Office of the Agency. From February through April Palafox initiated several collect telephone calls to Cazares. In late April 1982 Palafox and his wife (Gonzalez, who became a co-defendant with Palafox) continued communications with Cazares discussing the possible delivery of a quantity of heroin. In late July Palafox told Cazares that he was then out on parole and would soon arrange a delivery. On September 9 Palafox advised Cazares, again by telephone, that he would deliver a quantity of heroin and cocaine and that he was coming to Sacramento. On September 10 Palafox telephoned that he was in Los Angeles and that he and Gonzalez would arrive in Sacramento that night with 5 ounces of heroin. Three days later, on September 13, Palafox telephoned Cazares that he and Gonzalez were at Fresno, had 5 ounces of heroin, and would arrive in Sacramento in the early afternoon. That afternoon Palafox called Cazares and said he was in Sacramento at a shopping center parking lot and had the contraband. He gave Cazares a description of himself and of his vehicle.

Cazares drove to the lot and recognized Palafox standing by a Ford Ranchero vehicle. Seated inside was Gonzalez. Cazares parked his government car a short distance away and Palafox came over to the agent and introduced himself. The agent then walked over to the Ranchero and negotiated with Palafox and Gonzalez for the purchase and delivery of the contraband. Palafox wanted the agent to go with him to a motel where the agent could get a small sample of the heroin. After further negotiations Palafox agreed to produce the heroin. Palafox removed from under the dashboard of his vehicle a baseball sized ball of masking tape from which he unsuccessfully attempted to remove a sample quantity. Gonzalez gave him a fork to open the tape and they went over to the government vehicle. There Palafox handed Cazares the ball, from which Cazares removed a sample of brown heroin. Palafox then returned to his Ford Ranchero and replaced the ball under the dashboard. On the pretense that he would have to call someone to test the sample and would return, Cazares walked away and shortly thereafter gave a prearranged arrest signal. Other officers appeared and Palafox and Gonzalez were taken into custody.

Palafox was charged in a two-count indictment with two violations of 21 U.S.C. § 841(a)(1). Count I charged distribution of the sample. Count II charged possession of the bulk (124.58 grams) of heroin with intent to distribute.

The majority concedes that § 841(a)(1) creates two offenses and that possession with intent to distribute is a crime distinct and separate from distribution. The majority agrees that the government could properly charge, try and seek conviction of the defendant for the discrete offenses of distribution and possession, but the majority holds that the court, upon conviction, could sentence the defendant for only one offense.

Normally when Congress has created two offenses and a defendant is convicted of both, he would be subject to sentence on each, the sentence to run concurrently or cumulatively. The majority holds that only one may be imposed here. The question arises: Why? Because it is dictated by controlling precedent? Not so.

The controlling precedent in this circuit is *United States v. Mehrmanesh*, 682 F.2d 1303 (9th Cir.1982), a decision by a panel of

which the author of today's opinion was a member. It holds that each offense is properly subject to separate sentencing.

*Mehrmanesh* involved separate punishments for separate distributions of a sample and then of the remaining bulk of contraband. Mehrmanesh made a deal through an informant, Melchi, to sell 50 grams of heroin to Melchi's buyers. At a meeting between Melchi, Mehrmanesh and Mehrmanesh's associates, Napier and Reedy, Melchi asked for a sample to show to his principals. Mehrmanesh said that the heroin was elsewhere but he would have it delivered to the home of one of his associates the next morning. Reedy, who later gave evidence for the government, testified that Mehrmanesh arranged for Reedy to pickup the heroin and that he did so. Later, Mehrmanesh's associate, Napier, gave Melchi a 4 gram sample which apparently Melchi never delivered to his principal. Melchi later told Reedy and Napier that his principal wanted another sample. Reedy gave him 2.8 grams and this transfer became the basis of a count in the indictment which charged Mehrmanesh with aiding and abetting that distribution. When the balance of the heroin was delivered to the agent, approximately 594 grams, Reedy and Napier were arrested and that delivery was the basis of the second count against Mehrmanesh.

Mehrmanesh argued that there had only been one sale although there had been two distributions. The *Mehrmanesh* majority rejected this contention, noting that the 1970 Drug Act

> [o]n its face * * * proscribes each act of delivery, rather than each purchase or sale. [The Act is] extremely broad in scope, no longer restricted to the narrower concepts of buy and sell, but all inclusive in covering the entire field of narcotics and dangerous drugs * * * All distribution is controlled or prohibited, legitimate or illegitimate.

*Mehrmanesh*, 682 F.2d at 1306, citing *United States v. Pruitt*, 487 F.2d 1241, 1245 (9th Cir.1973). The court held that both distributions were separate offenses

and subject to separate sentences. Today's author of *Palafox*, who dissented in *Mehrmanesh*, did not then take issue with that holding, but dissented only on the grounds that she believed the evidence did not show Mehrmanesh's actual knowledge of and participation in the first delivery. Until today, *Mehrmanesh* has controlled this circuit's view.

As the majority recognizes, Congress intended to criminalize "all aspects of drug trafficking, and it compels us to reject an approach which focuses on sales or commercial transactions." Maj. op. at 560. When Congress fixed a 15 year maximum for possession with intent to distribute and a like penalty for distribution, "Congress indicated thereby that the offenses were equally serious and should be treated with equal severity. The Drug Act attacks illegal drug traffic by making the price for drug participation in any aspect prohibitive." *Id.* The majority agrees that Palafox may be charged and convicted of each offense and that the government need not declare an election between the crimes, citing cases from other circuits including *United States v. Gomez*, 593 F.2d 210, 213 (3d Cir.) (en banc), *cert. denied*, 441 U.S. 948 (1979).

The majority says, however, that only one sentence may be imposed. The *Gomez* court, to whose analysis the majority looks, based this conclusion on divination that Congress did not intend to "pyramid" sentences when "two violations of the statute are proved by but one distribution." *Gomez*, 593 F.2d at 213. This is inconsistent with our circuit's decision in *Mehrmanesh* and is contrary to the majority's analysis in the instant case. The majority here does not agree that the two violations amount only to "one" crime.

Lacking any supporting precedent in rulings of the Supreme Court under the Drug Act, the majority has reached out to an entirely different statute and a single decision thereunder upon which to base today's holding. The majority argues that its single-sentence theory finds authority in *Prince v. United States*, 352 U.S. 322

(1957), a decision interpreting the Federal Bank Robbery Act, 18 U.S.C. § 2113 *et seq.* In the Bank Robbery Act, the majority says, "Congress created separate offenses, i.e., entry with intent to rob, and robbery, out of what could have been described as one criminal undertaking." Maj. op. at 561. The Supreme Court held that as amended in 1937, § 2113(a) of that Act makes separately punishable bank robbery and larceny, but also the Act of entering a bank with intent to commit robbery and larceny; however, one may not be separately punished for both entry and successful ultimate robbery or larceny, because the history of the amendment convinced the Supreme Court that Congress intended no such discrete punishment. The majority tracks no such Congressional intent in the Drug Act.

As set forth hereafter, the Bank Robbery Act supplies no real analogue to treatment of the offenses of possession with intent to distribute and distribution. Although the Court in *Prince* held that a defendant could be convicted of both bank robbery and of entry with the intent to rob but could be sentenced to only the robbery itself, that conclusion does not illuminate the Drug Act which is an entirely different statutory provision and has an entirely different legislative history.

Robbery is an unlawful taking of personal property from the person or immediate presence of another accomplished variously by force, fear or intimidation. In the sense relevant here, bank robbery is "literally robbery committed in a bank." R. Perkins, Criminal Law 285 (1969). It is much like the common law crime of burglary. It cannot be committed without an entry of the premises. The federal act was passed in 1934, in the wake of gang robberies of banking institutions. At that time, the Act did not contain present section 2113(a), which punishes entry with the intent to commit robbery, other felony, or larceny. Section 2113(a) was added in 1937 at the urging of the Attorney General who cited to Congress "incongruous results" in which a thief walked out of a bank with $11,000 he had slipped into his pocket during the brief absence of a teller. Under the 1934 statute he had committed no federally prosecutable offense. *Prince,* 352 U.S. at 325–27, 77 S.Ct. at 405–406. Responding to this anomaly, Congress enacted the 1937 amendments which made punishable the entry with intent to "commit any felony or larceny," as well as the actual commission of those offenses. Later, the larceny provisions were segregated in § 2113(b), leaving ("simple") robbery and entry in § 2113(a). *Id.* at 326, n. 5, 77 S.Ct. at 406 n. 5.

Under today's Bank Robbery Act, entry is chargeable as a separate offense but punishable as such only if the intended crime does not succeed. The "gravamen of the offense" which Congress had in mind in 1937

> is not in the act of entering, which satisfies the terms of the statute even if it is simply walking through an open, public door during normal business hours. Rather the heart of the crime is in the intent to steal. This mental element merges into the completed crime if the robbery is consummated. To go beyond this reasoning would compel us to find that Congress intended, by the 1937 Amendment, to make drastic changes in authorized punishments. This we cannot do. If Congress had so intended, the result could have been accomplished easily with certainty rather than by indirection.

*Prince,* 352 U.S. at 328, 77 S.Ct. at 406 (footnotes omitted).

Despite some gross similarities, *Prince* furnishes no real clue to the problem in this case which is whether both possession and distribution are punishable under the Drug Act. Both are related acts denounced as criminal although arising out of the progressions of the transaction. The real inquiry must be whether Congress can be said to have intended each accomplished crime to be punished. Entry is an inseparable element of all bank robberies. One literally cannot commit the crime without entering because Congress was legislating *bank* robbery, not common law robbery.

Congress intended that one who went so far as to enter, but who then abandoned his project or was frustrated from its commission, should not go unpunished, but the "heart" of the amended statute lay in its proscription of mere stealing, in addition to proscription of the traditional robbery. Congress' purpose was not to *double* the already severe punishment for robbery. Rather, the purpose was to add theft, and entry to commit theft, as sequential, individually punishable acts. Viewing the "gravamen of the [newly added] offense" as the harm arising from the intent to steal, the Chief Justice in *Prince* held that where the intended crime is in fact consummated, the traditional elements of robbery are already satisfied without reference to the amendments. In such an actual case, the intent which accompanied the entry would carry over into the robbery, supplying the necessary union of act and intent (the Court said, "merges into the completed crime"). 352 U.S. at 328, 77 S.Ct. at 406. Congress' purpose in adding larceny within a bank to robbery within a bank logically would be satisfied by making it a crime to commit either act, as the Attorney General suggested. And when Congress went further and made entry punishable, it was not to enhance every substantive offense unless the objective fell short.

The Supreme Court in *Prince* found that Congress had no double penalties in mind and simply did not intend for bank robbery to be parsed into its separate elements where the robbery actually occurred. The Court specifically said that "the unlawful entry provision was inserted to cover the situation where a person enters a bank for the purpose of committing a crime, but is frustrated for some reason before completing the crime." *Id.* The Court contrasted the entry provision of the Bank Robbery Act with "a very similar provision relating to post office offenses," citing 18 U.S.C. § 2115: "Whoever forcibly breaks into or attempts to break into any post office, * * * with intent to commit in such post office, or building or part thereof, so used, any larceny or other depredation, shall be fined [not more than $1,000 or imprisoned not more

than five years, or both]." *Id.,* n. 9. The Court noted that § 2115 has been held to create an offense separate from a completed post office theft. *See Morgan v. Devine,* 237 U.S. 632, 35 S.Ct. 712, 59 L.Ed. 1153 (1915).

The majority has tried to bring this case within precedents holding that where a single act of distribution forms the basis of a charge of distribution and a charge of possession, only one sentence may be imposed. Maj. op. at 562. But it simply is untrue to say of the *Palafox* facts that "the possession and the distribution occurred at the same time, in the same place, and with the involvement of the same participants." *Id.* at 563. The possession existed before the distribution and some possession still existed when the distributor was arrested.

This however is, however, but one example of the diverse ways in which the majority has bent the facts to give credence to its conclusion. Palafox was convicted of "two criminalized steps of one transaction," *id.* at 562, "two such component offenses," *id.* at 561, "two offenses," *id.* at 563, and "one criminal undertaking." *Id.* at 563. The majority repeatedly sounds the theme that there really was practically only a single act in Palafox's case, and that if indeed there was but one act, there ought, as a sort of natural law, only be one punishment. The majority therefore is persuaded that only one sentence could be allowed

> where the defendant distributes a sample and retains the remainder for the purpose of making an immediate distribution to the same recipients at the same place and the same time * * *

Maj. op. at 560.

Questions immediately surface: Is such a rule to be applied literally or with flexibility? Does the liability to multiple punishment depend upon whether the person retaining possession intends an immediate distribution as distinguished from a generalized intent to distribute at some future time to some person? Does it matter

whether it is the seller or the buyer who is the dominant actor? Must both parties actually contemplate a lightning-fast wrap-up? Would it have been different had Palafox sensed danger and escaped? If so, would he face a single punishment if caught immediately, or double punishment if hours or days elapsed?

We took this case en banc to consider whether *Mehrmanesh* should be overruled. The majority concludes that it should be disapproved. But the majority opinion has in reality changed the facts of *Mehrmanesh* in arriving at that disapproval. According to today's opinion, the delivery of a sample by Mehrmanesh's accomplice, Reedy, to the informant, Melchi, was "unbeknownst" to Mehrmanesh. Maj. op. at 559. That is also what today's author, a member of that panel, said then in her partial dissent. The *Mehrmanesh* majority held that the defendant fully understood that a sample would be delivered. *See Mehrmanesh*, 682 F.2d at 1307–08. The trial jury and two judges necessarily found the facts contrary to the version urged by the dissent—the version which appears in today's majority opinion. A decent regard for the principle of the law of the case and that decisions are made by a majority of judges, must mean that decided facts are not subject to reconstruction when convenient to do so for the purpose of another case. If indeed the *Mehrmanesh* facts were as today's majority now assembles them, that case should be overruled, not for the reasons ascribed, but because it would be wrong to let stand a conviction for distribution of which a defendant had no knowledge and of which he was therefore innocent. Endorsing such a miscarriage of justice would reflect no credit

upon our appellate process; but that is not the issue upon which we convened ourselves en banc.[1]

In fact, the majority appears to be striving, uncertainly, for a rule to the effect that where "a single act of distribution forms the basis for both the charge of distribution and the charge of possession with intent to distribute, the government may prosecute and the defendant may be found guilty of both charges, but the court may impose only one sentence." Maj. op. at 562. But this is not such a case, for there is more than a single act here.

The majority suggests two rationales for its rule. One is by analogy to the decision in *Prince* and the other is that some other circuit courts have leap-frogged to the same conclusion. But the real inquiry, and an inquiry almost ignored by the majority, ought to have been: What did Congress intend in this statute? The majority does not argue that Congress could not constitutionally have made Palafox subject to punishment for both crimes. That would implicate the test set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) which has stood for many years as a rule for determining when multiple punishments for two offenses arising out of the same transaction may constitute double jeopardy. Impliedly, the majority concedes that in the Drug Act Congress could have imposed double punishments for double crimes. Did Congress so intend? That question is no where answered.

All the arguments advanced by the majority fail because they do not address the only issue which is dispositive of this case. The majority opinion presents no history, no language, and no facts showing that Congress did not intend for both punish-

---

**1.** Similarly, the facts surrounding Palafox's own embarassing mischance have been inaccurately portrayed in the statement that upon the passing of the sample of the heroin, "[a]lmost immediately thereafter agents arrested Palafox." Maj. op. at 559. That is not the record either. There was an interval of time between delivery of the sample and the arrest of Palafox; how much is not clear. We know that the agent walked away, ostensibly to go to a telephone. Defense counsel described the interval as com-

ing "within minutes," *see* Excerpts of Record at 11, but he did not say how many minutes. The money, the object of making the deal, had not passed, and Palafox certainly would not have given up possession before payment was made. Consequently, the crimes of possession before and afterwards, and of distribution, were distinctly separate. Whatever the time interval, the majority admits that two separate crimes were committed.

ments to apply in the Drug Act. Invoking the decision in *Prince* accomplishes little because the entire thrust of that case is that Congress intended only to fill the void pointed out to it, and did not intend in the 1937 amendments to change the 20 year punishment for bank robbery. That is not persuasive that a similar lack of Congressional intention applies to the Drug Act.

Neither do the several circuit court decisions cited by the majority give much help in reaching the Congressional purpose. On the contrary, those cases show how firmly Congress had gone about making each separate illegal drug act "equally serious," Maj. op. at 560; "making the price for drug participation in every aspect prohibitive," and "an all-out attempt to combat illicit drugs by subjecting [knowing offenders] * * * to substantial, and in some cases severe, penalties," *id.* at 560; "covering the entire field of narcotics and dangerous drugs in all phases of their manufacturing, processing, distribution and use," *id.* at 561; and that "Congress intended to proscribe all drug activity in enacting the Drug Act." *Id.* at 561.

No contemporaneous statements or writings, nor any subsequent research, has come to light to indicate that Congress did not intend to exercise its full power to impose against drug peddlers all the weight consistent with the statute which it was enacting and which we now must construe. Nothing in the "get tough" talk which preceded passage of the Act, and the ringing statements about "get[ting] at the pushers, the people who peddle * * *," 116 *Cong.Rec.* 33605 (1970), discloses to Congressional intent to stop short of both prosecution and punishment for conduct such as that before us.

The inapplicability of *Prince* is obvious. Given the direct relationship between the Attorney General's complaint to Congress of the deficiency in the 1934 Bank Robbery Act and how that problem frustrated law enforcement, all to be learned from *Prince* is that Congress merely responded with a cure for the perceived need. The *Prince* court found no need to extend its holding

further and therefore rejected arguments based purportedly on analogous cases dealing with fragmentation of crimes for purposes of punishment. The Court said

> None of these [cases] is particularly helpful to us because we are dealing with a *unique statute of limited purpose* and an inconclusive legislative history. It can and should be differentiated from similar problems in this general field raised under other statutes. The question of interpretation is a narrow one, and our decision should be correspondingly narrow.

*Prince,* 352 U.S. at 325, 77 S.Ct. at 405. (Emphasis supplied.)

We have two initial questions: (1) could Congress constitutionally create two offenses—possession and distribution—and (2) did it do so?

The majority answers both questions affirmatively. But in its prudential hypothesis that Congress did not intend, on today's facts, to punish cumulatively both acts, the majority can only point to a totally different statute and to the Supreme Court's *Prince* decision thereunder.

From the manifest purpose and intent of Congress, and the "narrow" decision in *Prince,* it does not follow that a similar Congressional intent, or a similar "narrow" construction should be applied to the Drug Act with its entirely dissimilar history and purpose. Normally, each proscription of specific conduct would be punishable. That is why criminal laws are enacted. Presumably Congress was as aware as we that *every* act of distribution is preceded by possession and some intention on part of the person having dominion and control. Congress saw itself in a struggle against drug trafficking. Nothing shows that it was motivated by compassion for traffickers which the majority would bestow.

If the cumulative sentences are somehow seen as unfair, and if the majority's result is based on "lenity," it should affirmatively demonstrate that Congress intended to grant such lenity unless it can challenge Congress' power to enact the separate punishments. A challenge would not succeed

because 21 U.S.C. § 841(a)(1) passes the *Blockburger* test. It simply does not constitute double jeopardy when multiple punishments are imposed for two offenses arising out of the same transaction where each offense "requires proof of a fact which the other does not." *See Albernaz v. United States*, 450 U.S. 333, 337–338, 101 S.Ct. 1137, 1141–1142, 67 L.Ed.2d 275 (1981) (quoting and applying the *Blockburger* test; conspiracies to import and to distribute marijuana separately punishable.)

The *Albernaz* Court first disposed of the contention that cumulative sentences, if authorized by Congress, would still be barred by the double jeopardy clause of the Fifth Amendment. It found that the two statutory sections involved in that case specified different ends as the proscribed object of the conspiracy—distribution in one, importation in the other—and therefore each section proscribed a different offense for which the imposition of separate sentences was proper.

The *Albernaz* Court also rejected the argument that because the statutes were "ambiguous" as to multiple punishment the rule of "lenity" should be applied to prevent consecutive sentences. The Court said that lenity is only "an aid for resolving an ambiguity; it is not to be used to beget one. The rule comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers." *Id.* at 342, 101 S.Ct. at 1144. (Citation omitted.) Congress' "silence" on the question of consecutive sentences does not make the Drug Act "ambiguous."

> Congress cannot be expected to specifically address each issue of statutory construction which may arise. But, as we have previously noted, Congress is "predominantly a lawyer's body," * * * and it is appropriate for us "to assume that our elected representatives * * * know the law." As a result, if anything is to be assumed from the congressional silence on this point, it is that Congress was aware of the *Blockburger* rule and

legislated with it in mind. It is not a function of this Court to presume that "Congress was unaware of what it accomplished * * * *"

*Albernaz*, 450 U.S. at 341–342, 101 S.Ct. at 1143–1144 (citations and footnote omitted).

> The conclusion we reach today regarding the intent of Congress is reinforced by the fact that the two conspiracy statutes are directed to separate evils presented by drug trafficking. "Importation" and "distribution" of marihuana impose diverse societal harms, and, * * * Congress has in effect determined that a conspiracy to import drugs and to distribute them is twice as serious as a conspiracy to do either object singly. * * * This result is not surprising for, as we observed many years ago, the history of the narcotics legislation in this country "reveals the determination of Congress to turn the screw of the criminal machinery—detection, prosecution and punishment—tighter and tighter." *Gore v. United States*, 357 U.S., at 390, 78 S.Ct. at 1283 (1958).

*Albernaz*, 450 U.S. at 343, 101 S.Ct. at 1144.

In *United States v. Woodward*, — U.S. —, 105 S.Ct. 611, 83 L.Ed.2d 518 (1985), the Supreme Court has considered in still another context whether conduct separately proscribed by Congress can be separately punished. Woodward was indicted on charges of making a false statement to an agency of the United States, 18 U.S.C. § 1001, and of willfully failing to report that he was bringing currency in excess of $5,000 into the country, 31 U.S.C. §§ 1058, 1101 (1976 ed.). In passing through Customs, he had been handed a form which asked if he or any family member was carrying over $5,000. He checked the "no" box. Officials searched Woodward and his wife and found over $20,000 in cash. The same conduct, answering "no," formed the basis of a count under 18 U.S.C. § 1001 (false statement) and a count under 31 U.S.C. § 1101(a) (willfully failing to report the transporting of more than $5,000). A jury convicted Woodward on both charges;

he was sentenced separately on each conviction.

This court held that the defendant could not be punished under both statutes, because under *Blockburger,* the false statement felony was a "lesser and included offense" of the currency reporting misdemeanor count. We concluded that Congress' silence showed an intention in such a case to punish only the reporting misdemeanor. 726 F.2d 1320 at 1326–27 (9th Cir.1983).

The Supreme Court unanimously reversed, per curiam. The Court said that the two statutes had different elements. Section 1001 punishes the nondisclosure of a material fact only if the fact is concealed by "trick, scheme, or device," whereas the willful failure to report that the traveler is carrying over $5,000 is punishable under § 1101(a) without any false statement. That difference in constituent elements sufficed to meet the *Blockburger* test.

The Supreme Court also said, citing *Albernaz,* 450 U.S. at 340, 101 S.Ct. at 1142, and *Missouri v. Hunter,* 459 U.S. 359, 367, 103 S.Ct. 673, 678–679, 74 L.Ed.2d 535 (1983), that "there is no evidence in [the two statutes] that Congress did *not* intend to allow separate punishment for the two different offenses." *Woodward,* 105 S.Ct. at 612 (emphasis supplied). And it said further that *"[w]e cannot assume, therefore, that Congress was unaware that it had created two different offenses permitting multiple punishment for the same conduct. Id.,* at 613. (Emphasis added.) The Court's opinion concludes

> Finally, Congress' intent to allow punishment under both [statutes] is shown by the fact that the statutes "are directed to separate evils." *See Albernaz, supra,* 450 U.S. at 343, 101 S.Ct. at 1144.
>
> \*  \*  \*  \*  \*  \*
>
> All guides to legislative intent reveal that Congress intended respondent's conduct to be punishable under both 18 U.S.C. § 1001, and 31 U.S.C. §§ 1058, 1101 (1976 ed.).

I conclude that in today's ruling, with inadequate analysis, upon infirm precedent, and without guidelines, the majority has merely converted into circuit law its own creative preference as to what should be the proper punishment under the Comprehensive Drug Abuse Prevention and Control Act of 1970. Hundreds of pages of legislative history are reflected in the passage of that legislation. *See, e.g.,* 116 *Cong.Rec.* (1970), *supra;* H.R.Rep. No. 1444, 91st Cong., 2d Sess. (1970), accompanying H.R. 18583; S.Rep. No. 613 (Judiciary Committee) 91st Cong., 2d Sess. (1970), *reprinted in* 1970 U.S.Code Cong. & Ad.News 4566 et seq. Yet, the majority has produced not a line to show that Congress did not know in 21 U.S.C. § 841(a)(1) that it had enacted two crimes, each carrying a severe sentence; or to show that the unique history of amendment to the Bank Robbery Act is probative of Congress' intent that upon conviction for possession with intent to distribute drugs, and actual distribution thereof, some ad hoc rule of lenity would operate to forbid two sentences.

One final aspect of the majority opinion is worthy of note. After deciding that Palafox may receive only one sentence, the court turns to a California statute and to a California rule of court and decides that they should be applied to sentencing in federal district courts. It appropriates not only the legislature's prerogative to legislate, but misconceives the function of this court.

More significant, however, is the fact that California Rule of Court 449, relied upon by the majority, is itself based upon a specific legislative authorization, Cal.Penal Code § 654. Rule 449 was adopted by the Judicial Council of the State of California pursuant to specific authorization in California Constitution, Article VI, section 6, which provides that the Council "shall adopt rules for court administration, practice and procedure, not inconsistent with statute \* \* \*." (West 1973 & Supp.1985). The analogy to California law is seriously flawed and no such authority to make rules for trial courts has been conferred upon

this court. The majority has simply decided to legislate on its own, which it has no business doing. If "problems may arise in connection with the imposition of single punishments where a defendant has been found guilty of multiple offenses," Maj. op. at 13, the remedy is to turn to Congress, or at least, to the Judicial Conference of the United States.

The majority's concern for fairness is not at fault. Its reasoning is. Accordingly, I respectfully dissent.

NELSON, Circuit Judge, with whom SNEED, Circuit Judge, joins, dissenting.

I respectfully dissent. On the facts of this case—Palafox's drug sample distribution *followed* by possession of the retained quantity with intent to distribute it—I feel that two crimes were committed, and that two convictions and two sentences were warranted.

A person who has been found guilty of violating two statutory provisions is, as a general rule, legally subject to two criminal convictions and two punishments. Courts have recognized only two narrow classes of exceptions to this rule: (1) where both violations result from a single act *and* the two statutory provisions are related in a special way which indicates that Congress has not authorized punishment for both violations in such a situation, *compare, e.g., Ball v. United States,* —— U.S. ——, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985) (double punishment not permitted); *and Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981) (same); *with, e.g., United States v. Rosales-Lopez,* 617 F.2d 1349 (9th Cir.1980) (two acts violating two related statutory provisions; double punishment permitted), *aff'd,* 451 U.S. 182, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981); *United States v. Mehrmanesh,* 682 F.2d 1303 (9th Cir.1982) (multiple acts violating same statutory provision; same); *United States v. Woodward,* —— U.S. ——, 105 S.Ct. 611, 83 L.Ed.2d 518 (1985) (per curiam) (single act, but provisions not related in the necessary way; same), or (2) where the two violations are of the types "x-with-intent-to-y" and an

immediately subsequent and contiguous "y" (*e.g.,* possession of a controlled or counterfeit substance with intent to distribute it, and distribution; entry into a bank with intent to rob, and bank robbery). *See, e.g., United States v. Oropeza,* 564 F.2d 316 (9th Cir.1977), *cert. denied,* 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 788 (1978) (Drug Act); *Prince v. United States,* 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957) (Federal Bank Robbery Act).

The present case falls into neither of these categories, and the majority does not and cannot establish otherwise. Its opinion apparently aims to bring Palafox under the second exception, in that it purports to rely upon *Prince* and the *Oropeza* line of Drug Act decisions. These Drug Act (and bank robbery) cases, however, are inapplicable to the present case because, as the majority points out, they concerned situations in which "a single act of distribution form[ed] the basis for both the charge of distribution and the charge of possession with intent to distribute." Maj. Op. at 562. As conceded by the majority, *id.* at 563, this is *not* the situation presented here. It was a *second* contemplated act of distribution which was never consummated, and which was distinct from the earlier sample distribution, which formed the basis for Palafox's possession charge. Thus, under *Oropeza* Palafox could not have been convicted and sentenced separately for possession had he actually carried out the distribution of the bulk of the heroin; but because his possession never ripened into a second distribution, there is no consummated distribution offense which can subsume Palafox's possession charge in the way contemplated by the Drug Act cases cited by the majority.

The actual order of events, then, is of crucial importance in deciding whether to except a defendant from the ordinary "two conviction, two punishment" rule. An "x-with-intent-to-y" offense logically must merge into the "y" rather than vice versa; on remand, the district court presumably must vacate and stay Palafox's conviction and sentence on the possession count rath-

er than the distribution count. Yet this is unsatisfactory, because an "x-with-intent-to-y" offense cannot logically merge into a *preceding* "y" offense. And, furthermore, it certainly makes no sense for a defendant's possession with *intent to distribute the bulk* to merge into his prior *distribution of the sample.* In addition to the obvious flaw in such a result, it will often pervert the penalty received by the guilty defendant, because 21 U.S.C. § 841(b) prescribes heavier penalties for drug offenses involving larger drug amounts and a possession offense such as Palafox's may exceed the threshold while distribution of a sample does not.

In needing to overrule *United States v. Mehrmanesh*, 682 F.2d 1303 (9th Cir.1982), the majority reveals the weakness of its reasoning. *Mehrmanesh* persuasively and straightforwardly established that the Drug Act treats each delivery of a controlled substance to be a separately punishable act of "distribution," and rejected an alternative approach which would have focused upon broader "transactions" as providing the units for conviction and punishment. Even the present majority opinion cites *Mehrmanesh*'s rejection of a transaction approach. Maj. Op. at 560. Later, however, and in *ad hoc* fashion, the majority feels compelled to overrule the doctrine of *Mehrmanesh*, although apparently only for situations where the sample and bulk distributions occur at the same time, in the same place, and between the same parties. The majority would not have needed to create such unnecessary legal complications had it been able to achieve its desired result by following the *Oropeza* and *Prince* lines of authority. But the result in this case cannot be reached by either exception to the "two conviction, two punishment" general rule alone; consequently, the majority must strain to create a new hybrid exception, whereby not only does Palafox's possession merge into the subsequent distribution which never occurred (under *Oropeza* ) but also this second distribution merges with the prior sample distribution (under the overruling of *Mehrmanesh* ). In pursuing its questionable ends in

this one case, the majority has found itself forced to undermine well-reasoned precedent and to confuse a previously settled area of the law.

The majority's reaching for the illusory support of the first exception to the multiple punishment rule is obvious not only from its treatment of *Mehrmanesh*, but also from its repeated reference to Palafox's single criminal "undertaking." Employing a spatiotemporal definition of transaction rather than the commercial one explicitly rejected in *Mehrmanesh*, the majority apparently endeavors to treat Palafox's conduct as constituting essentially one act. While this innovation is itself quite problematic, as discussed below, a more immediate flaw in the majority's reasoning is that even if we assume that Palafox's two violations arose from a single "act," the two statutory provisions which he violated do not stand in the relationship necessary to justify a "one conviction, one punishment" result. Where one act violates two different statutory provisions, the appropriate test of legislative authorization for multiple punishments is the one outlined in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *Ball*, 105 S.Ct. at 1672. Yet under this test, as Judge Poole correctly points out, a defendant whose single act has violated the two provisions of 18 U.S.C. § 841(a)(1) involved in this case *may* be separately convicted and punished for both offenses. Thus, the majority's result is incorrect, one "undertaking" or not.

The broad new "undertaking" approach taken in the majority opinion is rather troubling in other ways, as well. The majority purports to have extracted a "theme" from prior precedents, maj. op. at 562, but in fact has created an entirely novel doctrine. The complexities, confusions, and subleties of this doctrine, combined with the imprudently expansive manner in which it has been stated in the majority's opinion, do not augur well for the clear and consistent development of the criminal law of this Circuit. Although the majority's rule is stated even more broadly elsewhere in its

opinion, *id.* at 563, we may take the following statement of the rule as the controlling one:

> when more than one offense arises under § 841(a)(1) from a single criminal undertaking involving drugs, and each offense is committed at virtually the same time, in the same place, and with the same participants, the punishments should not be compounded.

*Id.* at 562. This rule will create substantial problems of application, most of which are no doubt not even foreseeable at this time. Most obviously, because section 841(a)(1) prohibits manufacturing, distribution, dispensing, and possession with intent to do any of these, double convictions and sentences will no longer be permitted even for the drug dealer who *manufactures* a controlled substance in the presence of a customer and thereupon distributes the product to that customer. There is absolutely no indication that Congress authorized such a result, especially in light of the harsh legislative purposes acknowledged by the majority to lie behind the Drug Act.

Other outcomes and difficulties in implementation can be anticipated which provide similar cause for concern. The majority reasons, *id.* at 563, that a drug dealer who distributes, say, 5 grams to one buyer and retains 95 for sale to other buyers is subject to two convictions and two punishments, one for the distribution and one for the possession with intent to distribute the remainder. This is unobjectionable. Suppose, however, that the first buyer, immediately after paying for his 5 grams, impulsively decides to purchase 5 more and the dealer, after deliberating briefly, agrees to another sale. Would he be subject to an additional conviction and punishment? It is no wonder that the panel in Palafox's companion case, *United States v. Gonzalez*, 715 F.2d 1411 (9th Cir.1983), rejected arguments of Palafox's wife identical to those offered by Palafox and, like the court in *Mehrmanesh*, "chose not to emphasize the passage of time or the different locations between deliveries, but rather to relieve courts of the burden of examining such factors by flatly rejecting the defendant's transactional approach." 715 F.2d at 1412.

Moreover, the majority is simply mistaken in its notion that distribution of a drug sample is part of the same criminal act as the subsequent distribution of the bulk. It is clear that going through with a bulk distribution requires a separate and additional impulse of action on the part of a drug dealer, because he always retains the option, even after distributing a sample, of backing out of the final deal (or perhaps backing out partially, by deciding to sell only part of the bulk to this buyer and to retain the rest for other buyers). Undoubtedly, many drug sales follow this course, whether due to dissatisfaction over the proposed payment, to an uneasy suspicion on the part of the seller that the buyer may not be who he says he is, to a new-found personal dislike of the buyer, to some other change in circumstances, or simply to the mixture of fear and conscience called "cold feet." In the present case, Palafox's decision to replace the bulk in its hiding place in his automobile bespoke his realization, obviously well-founded in this case, that his drug transfer plans might not reach their fruition even though the sample had already changed hands.

Consequently, it would hardly be unjust to doubly punish a drug trafficker who has persisted in distributing the bulk after a sample has been distributed and tested. Nowhere in its opinion does the majority explain why courts should bend over backwards to accommodate such sophisticated and determined drug dealers, especially when Congress has sought to deal as harshly as it has with drug offenders.

In fact, in only one place in its opinion does the majority really attempt to provide a reasoned justification for the lenient rule it adopts:

> Permitting separate punishments in the present case could lead to potentially ludicrous results. Government agents, for example, could ask for repeated samples, and turn one intended delivery into a theoretically infinite number of crimes,

each punishable with a maximum of fifteen years. Such results were not intended ...

Maj. Op. at 563. Yet even this argument cannot justify the majority's novel approach. First, the problem envisioned by the majority is inherently self-limiting, as government agents are undoubtedly extremely careful not to arouse the suspicion, violence, and/or flight of dangerous and already-wary drug traffickers by requesting an excessive number of samples. Second, why should punishment depend upon such marginally relevant factors as whether the government agent asked for the final distribution to take place in five minutes or two hours, or to take place here or around the block? In fact, it is not even clear in the present case that Palafox's distribution of the bulk, after the sample had been tested, was to have occurred "at virtually the same time, in the same place, and with the same participants" as his distribution of the sample. The majority's rule may discourage government agents from wrapping up drug investigations with the speed, security, and safety that was present in Palafox's case, and may lead them to extend their operations riskily in order to shift the ultimate bulk distribution to a different scene or time. And this points up a third failing with the majority's argument: its own rule does not solve the problem it raises. For government agents will still be able to multiply the number of offenses by requesting multiple samples in ways which will not fall under the majority's narrow exception. And, samples aside, an enforcement agent will in no way be restrained by the majority's decision from simply extending his buyer-seller relationship with the dealer so that it encompasses "a theoretically infinite number" of distinct drug sales and distributions, each of which will still be separately punishable under the majority's ruling.

Of course, the close relationship between two criminal acts may be a legitimate mitigating factor to be considered by the sentencing judge. But this cannot alter the fact that the two criminal acts of distribution and possession of the remainder with intent to distribute may be punished separately, and it does not justify the doctrinal innovations of the majority's opinion. Palafox's two convictions and two punishments should not be disturbed.