Charles Matthew JIMENEZ, Appellant,

v.

The STATE of Texas, Appellant.

Nos. 13–86–454–CR, 13–86–455–CR.

Court of Appeals of Texas,
Corpus Christi.

Oct. 29, 1987.

Rehearing Denied Nov. 30, 1987.

**500**

Joseph A. Connors, III, McAllen, for appellant.

Theodore C. Hake, Edinburg, for appellee.

Before DORSEY, UTTER, and KENNEDY, JJ.

## OPINION

DORSEY, Justice.

Appellant was charged with two offenses of delivering cocaine.[1] The deliveries allegedly occurred on the same day, the first for less than 28 grams and the second for more than 28 but less than 200 grams. After a consolidated bench trial, the trial court convicted appellant of both offenses and sentenced him to imprisonment for one term of six years and one term of eight years. Appellant raises points of error concerning the sufficiency of the evidence, the adequacy of the indictments, the failure of the State to elect on which of the two offenses it would seek conviction and punishment, and the admissibility of extraneous offenses. We affirm.

1. Tex.Rev.Civ.Stat.Ann. art. 4476–15, § 4.03 (Vernon Supp.1987) (Controlled Substances

By his first three points of error in both causes, appellant challenges the sufficiency of the evidence to sustain his convictions. Appellant's challenge to the sufficiency concerns his criminal liability as a party to both offenses.

In separate indictments appellant was charged with delivery by actual transfer of cocaine, a controlled substance. The indictments were identical but for the amount of cocaine delivered, and neither charged him with criminal responsibility for the conduct of another in accordance with Tex.Penal Code Ann. § 7.02 (Vernon Supp.1987). Appellant was convicted on both indictments after a common trial without a jury.

The State's evidence consisted of the testimony of two police officers and a police chemist. Appellant did not introduce any evidence at the guilt/innocence phase of trial.

Officer David Ramos testified that, pursuant to an informant's tip, he contacted Mark Enbault to purchase a kilo of cocaine. They arranged a meeting at the rear of a gas station.

Officer Ramos and his partner, Officer Manuel Garcia, working undercover, arrived at the gas station. They met Enbault and appellant, who drove up in a pickup. Enbault directed the officers to a hotel room. Officer Garcia waited outside the hotel room while Officer Ramos entered the hotel room with Enbault and appellant. Another man, Anthony Stapleton, was inside the room and greeted them.

After conversing with Officer Ramos about the proposed transaction, Stapleton pulled out a baggie containing a white, powdered substance from his pocket. According to Officer Ramos, Stapleton "began cutting up some lines of cocaine, and there was a straw there, and he handed me a rock and asked me to sample it." Stapleton and appellant "snorted up a few lines of cocaine."

Officer Ramos gave the sample to his partner, then told the others that he and

Act).

Officer Garcia were leaving to get a scale and would return shortly. They drove to the police department where the sample tested positive as cocaine. They picked up a scale and returned to the hotel room where appellant and the two other men were waiting.

After more negotiations, Enbault and Stapleton went into another room to weigh the cocaine. Appellant and Officer Ramos remained in the main room and struck up a conversation. Over objection, Officer Ramos testified that appellant stated he had been dealing drugs for over two years and that Officer Ramos only needed to make a phone call to get all the cocaine he wanted. Another man arrived at the hotel room, a Mr. Pena, and snorted a few lines of cocaine.

Enbault and Stapleton returned with four ounces of cocaine. Enbault and Officer Ramos agreed on a price of $1,500.00 per ounce. When Officer Ramos asked to see the merchandise, Stapleton pulled out a plastic baggie about three-quarters full, wrapped in a napkin. Appellant told Mr. Pena to wait outside the room, apparently just before Stapleton pulled out the cocaine. Stapleton handed the cocaine to Officer Ramos, then told him to leave it in the room while he talked to Officer Garcia, who was waiting outside. Officer Ramos gave Officer Garcia a prearranged bust signal, and he and his partner proceeded to arrest appellant and the other men.

Officer Garcia's testimony corroborated Officer Ramos' testimony. Garcia testified that while waiting outside the hotel room, he met with appellant and showed him $30,-000.00 in flash money. According to Officer Garcia, appellant "seemed to be in agreement, that everything was fine, the money was all there."

DPS Chemist Steve Robertson testified he performed tests on the sample and the larger amount brought to him by Officer Garcia. Both were cocaine, he testified, and were admitted into evidence.

In his first two points of error in each case, appellant asserts the evidence is insufficient to show he delivered by actual transfer, in that there is no evidence that he actually transferred the cocaine. In his third point of error he maintains the evidence is insufficient to sustain a finding of guilt under Tex.Penal Code Ann. § 7.02 (Vernon 1974) (Criminal Responsibility for Conduct of Another).

Section 1.02(8) of the Controlled Substances Act provides three means for one to accomplish delivery of a controlled substance: actual transfer, constructive transfer, or by offer to sell. The means of effecting the delivery must be alleged in the indictment. *Ferguson v. State*, 622 S.W.2d 846, 850–51 (Tex.Crim.App.1981). The means alleged in the instant indictments are by actual transfer. Appellant argues that there is no evidence that he handled the drugs or physically made the transfer. We agree. However, it is not necessary for one to personally perform a prohibited act in order for him to be held criminally liable for its accomplishment, as explained in our discussion of his fourth through seventh points of error. *See also* Section 7.02(a)(2) of the Penal Code. Appellant's first and second points of error in each cause are overruled.

Appellant's fourth through seventh points of error in both causes complain of the trial court's refusal to grant his "Motion for Precise Notice and to Bar Subsequent Prosecution." He asserts he was entitled to notice that he would be tried as a party to the delivery and not as the actual transferor of the cocaine as alleged in the indictment. His eighth point avers that he was denied a fair trial because of this.

Appellant was charged in two indictments with "intentionally and knowingly deliver[ing] by actual transfer to, David Ramos, a controlled substance ..., to wit: Cocaine ..." in two different amounts.

Tex.Penal Code Ann. §§ 7.01, 7.02 (Vernon 1974) govern the law of parties. Section 7.02(a)(2) provides that a person is criminally responsible for an offense committed by the conduct of another if, acting with the intent to promote or assist the offense, he aids or attempts to aid the other person to commit the offense. Sec-

tion 7.01(c) provides, "each party to an offense may be charged and convicted without alleging that he acted as a principal or accomplice." Thus, it is unnecessary to specifically allege that an accused is being charged as a party in the indictment in order to convict the accused as a party. *Williams v. State*, 676 S.W.2d 399, 401 (Tex.Crim.App.1984); *Pitts v. State*, 569 S.W.2d 898, 900 (Tex.Crim.App.1978).

■ Further, we hold that this rule of law does not deprive an accused of a fair trial. We overrule appellant's fourth through eighth points of error.

Appellant's third point of error in each cause is that the evidence is insufficient to sustain the convictions when applying the Law of Parties, Section 7.02, Criminal Responsibility for the Conduct of Another.

■ Mere presence of a person at the scene of the crime, without more, is insufficient to sustain a person's conviction as a party to the offense. *Thompson v. State*, 697 S.W.2d 413, 417 (Tex.Crim.App.1985). When combined with other incriminating evidence, presence at the crime scene can be sufficient to sustain a conviction. *Id.* We are entitled to look to the facts most favorable to the judgment and to look to the events that occurred before, during, and after the commission of the offense. *Id.* at 416.

■ The evidence establishes more than appellant's mere presence. According to the police officers, appellant was present when negotiations for the sale of cocaine were conducted. Appellant met with one officer to look at the money held by the officer to purchase the cocaine. When the actual transfer of the main amount of cocaine occurred, appellant instructed a latecomer, Mr. Pena, to leave the room. When Enbault and Stapleton left the room to get the four ounces of cocaine, appellant bragged that he alone could handle future cocaine sales. In reviewing the evidence in the light most favorable to the judgment, *Houston v. State*, 663 S.W.2d 455 (Tex. Crim.App.—1984), we find that the above recited evidence supports the conclusion that the appellant aided or attempted to aid another in the commission of the offense with the intent to promote or assist the commission of the offense. Section 7.02(a)(2). *Cf. Spurgers v. State*, 576 S.W. 2d 830, 831–32 (Tex.Crim.App.1978); *Westfall v. State*, 663 S.W.2d 664, 666–67 (Tex. App.—Corpus Christi 1983, pet. ref'd). We overrule his third point of error in both causes.

■ Appellant's ninth point of error in Cause No. 454 assigns error to the trial court's denial of his motion to force the State to elect which transfer of cocaine it would proceed on, the transfer of the sample or of the larger amount. On the same grounds, his tenth point avers that the trial court also erred in imposing two sentences.

Appellant's theory is that since only one criminal transaction occurred, only one conviction and punishment was permissible. Finding no Texas cases on point, appellant cites *United States v. Palafox*, 764 F.2d 558 (9th Cir.1985) as "instructive." The defendant in *Palafox* gave a police agent a sample of heroin. The agent, with appellant's permission, took a small amount of heroin from a package containing the defendant's main supply, then gave the package back to the defendant and arrested him. He was charged with and convicted of distribution of the sample and for possession of the main package. He was sentenced on both convictions.

The Ninth Circuit reversed. Interpreting congressional intent, the Court held "where the defendant distributes a sample and retains the rest for the purpose of making an immediate distribution to the same recipient at the same place and at the same time, verdicts of guilty may be returned on both counts but the defendant may be punished on only one." *Id.* at 560. The Court stressed, however, that "the delivery of a sample may well be a separately punishable offense in different circumstances." *Id.* at 563.

The *Palafox* Court cited *United States v. Mehrmanesh*, 682 F.2d 1303 (9th Cir.1982), a case we find to more closely resemble the facts of the instant case than *Palafox*. Mehrmanesh was convicted and sentenced on two counts of distribution of heroin.

Mehrmanesh and his associates first gave a sample of the heroin to agents acting for the police, then later delivered a much larger amount. The defendant contended only one transaction occurred, in that the sample was given as part of the total transaction to distribute all the heroin.

In affirming the convictions, the Ninth Circuit looked to the legislative intent behind the federal narcotics statute, upon which Tex.Rev.Civ.Stat.Ann. art. 4476-15 (Vernon 1974), the Controlled Substances Act, is patterned. The Court noted that distribution is defined as delivery under the statute and concluded that the act proscribes *each* act of delivery; *deliveries,* not *transactions,* are punishable. *Palafox* later narrowed this rule slightly, as explained above, but it is distinguishable from the instant case. Unlike in *Palafox,* no immediate distribution of the sample and the main amount of cocaine occurred in the case at bar.

We find the federal cases' logic persuasive. The facts of the instant case more closely resemble those in *Mehrmanesh* than *Palafox.* A complete offense occurred each time the cocaine was transferred. Appellant was properly prosecuted for both transfers. We overrule his ninth and tenth points of error in Cause No. 454.

By his eleventh and twelfth points of error in Cause No. 454 and his ninth and tenth points in Cause No. 455, appellant contends that the trial court erred in admitting into evidence testimony concerning prior extraneous offenses. Appellant refers to the comments Officer Ramos attributed to him when the two men were talking while Enbault and Stapleton were in another room. According to Officer Ramos, appellant told him that he had been dealing drugs for about two years and could obtain any kind of narcotic.

Evidence of extraneous offenses is generally not admissible. *Williams v. State,* 662 S.W.2d 344, 345–46 (Tex.Crim. App.1983). However, several exceptions to this rule exist, although all require the extraneous offense to be relevant to a material issue in the case, and the relevancy value must outweigh any prejudice to the accused. *Id.* at 346; *Albrecht v. State,* 486 S.W.2d 97, 99–100 (Tex.Crim.App.1972).

Appellant's statements to Officer Ramos occurred during the course of the negotiations for the transfers of cocaine. They constituted part of the context of the offense, which is one of the exceptions to the general prohibition of extraneous offenses. "When the balancing test is applied, evidence of the context of the offense is almost always admissible." *Mann v. State,* 718 S.W.2d 741, 744 (Tex.Crim.App. 1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1633, 95 L.Ed.2d 206 (1987). This is because events do not occur in a vacuum, and the jury has a right to have the offense placed in its proper setting so that all evidence may be realistically evaluated. *Id.* We find that evidence of appellant's comments was admissible.

Even assuming appellant is correct, any error is harmless. When reviewing a trial to the court, appellate courts will presume the trial court disregarded all improper evidence when rendering judgment. *Ozack v. State,* 646 S.W.2d 941, 943 (Tex. Crim.App.1983). This presumption also applies at the punishment stage. *Williams v. State,* 641 S.W.2d 925, 927 (Tex.Crim.App. 1982); *Trevino v. State,* 655 S.W.2d 210, 212 (Tex.App.—Corpus Christi 1983, no writ). Appellant is unable to rebut this presumption. He argues that the court stated at the punishment stage that appellant "was not totally new to this [selling narcotics]," but this does not reveal an improper reliance on the testimony in question. The judge stated he had read appellant's evidence, consisting of letters from appellant's family and friends. The judge also had a pre-sentence investigation report when sentencing appellant, which, like the letters, is not part of this appellate record. That report or the letters may well have alluded to earlier drug dealing by appellant, and we will not presume otherwise.

We AFFIRM the judgments of conviction.