NUMBER 13-98-665-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


NOE FIGUEROA
, Appellant,


v.



THE STATE OF TEXAS
, Appellee.

___________________________________________________________________


On appeal from the 206th District Court


of Hidalgo County, Texas.


____________________________________________________________________


O P I N I O N



Before Justices Chavez, Rodriguez, and Kennedy(1)


Opinion by Justice Kennedy



 Appellant was convicted, by a jury, of murder. The same jury
assessed punishment at confinement for sixty years and a fine of
$10,000.

 The facts are disputed, however, the jury heard evidence that the
victim of the murder, Omar Perez, and a friend, Samuel Washington,
picked up appellant and went for a ride in the victim's car. During the
time the three were together the victim came to be in possession of a
gold chain belonging to appellant and refused to return it to appellant. 
Appellant got a gun and shot the victim in the face. The remaining two
parties, appellant and Washington, separated and appellant was
subsequently arrested without a warrant.

 In his brief, appellant, under the heading "issues presented" lists
seven topics. Later in the brief, he begins to argue points of error which
number nine in all before the conclusion of this brief. We will consider
the "points of error" in the order presented whether or not they
correspond to the "issues presented." 

 The first point of error challenges the arrest of appellant as being
illegal which, appellant argues, produced written and oral statements
and the results of an atomic absorption test.(2) The argument in support
of this point of error is that everything seized as a result of an illegal
(warrantless) arrest should have been suppressed. The trial judge
conducted a hearing on the motion to suppress and denied the motion. 


 Warrantless arrests are governed by the terms of article 14.04 of
the Code of Criminal Procedure, as follows:

Article 14.04 WHEN FELONY HAS BEEN COMMITTED

Where it is shown by satisfactory proof to a peace officer
upon the presentation of a credible person, that a felony has
been committed, and that the offender is about to escape, so
that there is no time to issue a warrant, such peace officer
may, without warrant, pursue and arrest the accused.


Tex. Code Crim. Proc., Art. 14.04 (Vernon 1977).

 There is no evidence in the record tending to show that the
arresting officers thought appellant was about to escape when he was
arrested. Thus the warrantless arrest was not valid. The thrust of point
of error one is that (A) appellant's written statement, (B) his oral
statement, and (C) the result of the atomic absorption test, being the
products of an illegal arrest, should be suppressed. This leads to the
question "Did the invalid arrest result in error in the admission of the
statements and the results of the test into evidence?" 

 In Johnson v. State, 871 S.W.2d 744 (Tex. Crim. App. 1994), the
Court of Criminal Appeals adopted the standard set forth in Brown v.
Illinois, 422 U.S. 590 (1975), in order to determine whether the taint of
an illegal arrest was sufficiently attenuated from the obtaining of the
appellant's statement, in order to make the statement admissible, to
wit: 

In Brown, the United States Supreme Court noted the
following four relevant factors to be considered in
determining whether such taint was attenuated: (1) whether
Miranda warnings were given; (2) the temporal proximity of
the arrest and the confession; (3) the presence of intervening
circumstances; and particularly, (4) the purpose and
flagrancy of the official misconduct.


Johnson, 871 S.W.2d at 751. The court further said "all four factors
must be considered and no one factor shall be dispositive." Id. at 751.

 Appellant's written statement was taken on the morning following
his arrest and his being booked into jail on the previous evening. Before
he gave the written statement, appellant had been given his Miranda
warnings four times, including once in writing. There is no evidence to
suggest that appellant was abused in any manner. From the testimony
at the suppression hearing, it is apparent that the reason the officers
failed to obtain a warrant was because they didn't think it was
necessary, rather than from their haste in taking a statement.

 The oral statements and the atomic absorption test were given on
the day of the arrest. Again, appellant had been given his Miranda
warnings more than once before either of these occurred. 

 With regard to all three matters sought to be suppressed, the
portions of the "attenuation" test which involved the Miranda warnings
we hold to have been met. From the record we discern no flagrant
misconduct. The temporal proximity of arrest on the one hand, and
taking the oral statement and swabbing for gun powder residue on the
other hand, is not so clear-cut as it is with regard to the written
statement. However, temporal proximity is a more ambiguous factor
and does not carry as much weight as the giving of Miranda warnings. 
Wilkins v. State, 960 S.W.2d 429, 433 (Tex. App.-- Eastland 1998, pet
ref'd). The purpose of the inquiry into the four factors is to determine
whether the statement is actually the product of an illegal arrest, or, in
other words, whether there was a causal connection between the arrest
and the giving of the statement. Id at 433. We hold that there was not.

 The record shows no intervening cause present in the facts of this
case, however, from all the facts and circumstances, we hold that there
was sufficient attenuation to remove whatever taint might be presumed
or suspected from the illegal arrest. We overrule point of error number
one.

 Point of error number two states, "the trial court reversibly erred
in excluding proper evidence sought to be introduced by the
defendant." Point of error number three states, "The total impact of the
court excluding proper evidence was to deny the defendant: (A) due
process; (B) fair trial." Appellant argues these points jointly and we
consider them together.

 The first excluded evidence objected to is "the cross-examination
of [the eyewitness to the shooting] concerning his statement that the
defendant did not want the deceased around because he the deceased
was f_ _ _ _ _ g his mother." This is a misstatement of the record. The
court did allow cross-examination and impeachment of this witness. 
On this point the testimony does not establish self defense or any other
affirmative defense. It is not relevant to any issue in this case.

 Appellant next complains of the court's refusal to allow the
defense to ask probable cause to arrest questions. Probable cause is
not an issue for the jury to determine based upon the facts of this case.

 Appellant claims error in the court's refusal to allow him to show
"character evidence of the deceased, consisting of his school records
and the testimony of a witness to show his aggressive non-peaceable
conduct and basic bullying behavior." He cites rule 404(a)(2) of the
Rules of Evidence to support his claim of error. This rule states:

Rule 404 character evidence not admissible to prove
conduct; exceptions; other crime.


(a) character evidence generally. Evidence of a person's
character or character trait is not admissible for the purpose
of proving action in conformity therewith on a particular
occasion, except:

(2) Character of victim. In a criminal case and subject to rule
412, evidence of a pertinent character trait of the victim of
the crime offered by an accused, or by the prosecution to
rebut the same, or evidence of peaceable character of the
victim offered by the prosecution in a homicide case to rebut
evidence that the victim was the first aggressor; . . . 


Tex. Rules Of Evidence Rule 404 (Vernon Special Pamphlet 1999). Here,
there was no evidence of the victim being the aggressor. Even by
appellant's own statement, the victim was unarmed and sitting in a car
when appellant shot him. 

 For the balance of these two points of error, appellant refers us to
his point of error number five which we will take up in due course. 
Otherwise, points of error two and three have no merit and they are
overruled. 

 Point number four alleges ineffective assistance of counsel in
failing to object to "soliciting witnesses' opinions on proper
punishment" and "obtaining prejudicial comments concerning
defendant preying on others." During the punishment phase of the trial
the state called to the stand the father and two sisters of the deceased
and each was asked, on direct examination, to state his or her
recommendation as to the punishment for appellant. Each, in turn,
stated that life imprisonment would be appropriate. In addition the
father said, 

I'll tell you one thing, my son was an eighteen year old
young man that died to the hands of a 34 year old man who
pried [sic] on young kids. I sure wouldn't like to see any
other kid my son's age to fall prey to people like this. So, if
you'll excuse me, put him away for life. It's hard for me to
say this but I mean it out of my heart.


 We judge ineffective assistance of counsel by the well established
two-prong rule first announced in Strickland v. Washington, 466 U.S.
668 (1984), and followed in Hernandez v. State 726 S.W.2d 53, 57
(Tex. Crim. App. 1991). Stated succinctly, the rule requires first a
showing that counsel's performance was deficient, and second, that
but for such deficient performance a different result would have
occurred.

 We note first that, in spite of the life sentence recommendation of
the witnesses, the jury assessed punishment at confinement for sixty
years. This suggests that the jury was not influenced by the testimony
which, in turn, indicates that punishment verdict would not have been
different had the testimony not been heard. There is no showing by
appellant that a different result would have been reached if trial counsel
had objected to the testimony and been sustained. The second prong
of Strickland has not been met.

 This court has held in Moffett v. State 930 S.W.2d 823, 826 (Tex.
App. -- Corpus Christi, 1996, no pet.) "Our review of counsel's
performance must be highly deferential." And, "In determining
whether trial counsel rendered deficient performance, we employ a
strong presumption that counsel's conduct constitutes sound trial
strategy." Citing Strickland, 466 U.S. 689. The decision to not object
to a question where the jury pretty much knows what the answer is
going to be is a judgment call. Resolving the decision in favor of letting
the jury hear the answer cannot be considered to be wrong. We defer
to trial counsel's decision.

 Neither prong of Strickland has been met. We overrule point of
error number four. 

 Point of error number five raises the question whether it was error
for the trial court to deny appellant the testimony of two psychiatrists
to show that appellant was suffering from mental illness as mitigation
evidence in punishment. Appellant cites article 37.07 of the Code of
Criminal Procedure(3) to allow the jury to consider the relevant mitigation
evidence. Section 3(a) of this article provides, in pertinent part: 

Regardless of the plea and whether the punishment be
assessed by the judge or the jury, evidence may be offered
by the state and the defendant as to any matter the court
deems relevant to sentencing, including but not limited to
the prior criminal record of the defendant, his general
reputation, his character, and opinion regarding his
character, the circumstances of the offense for which he is
being tried, and, notwithstanding rules 404 and 405, Texas
Rules of Criminal Evidence, any other evidence of an
extraneous crime or bad act that is shown beyond a
reasonable doubt by evidence to have been committed by
the defendant or for which he could be held criminally
responsible, regardless of whether he has previously been
charged with or finally convicted of the crime or act.


 Appellant did not plead insanity as a defense. We do not read this
section, or the entire article 37.07, to entitle appellant to introduce
evidence of his mental condition during the punishment phase of the
trial in an effort to mitigate punishment. We overrule point of error
number five.

 Point of error number six complains of rulings of the trial court
which admitted into evidence over objection extraneous offenses,
repeated hearsay, and a written statement. We will recite these matters
in succeeding paragraphs and comment on each.

 The first complaint has to do with the court allowing the jury to
hear testimony that appellant, the victim, and the eyewitness were
smoking marijuana. Evidence of the context of the offense is almost
always admissible under the reasoning that events do not occur in a
vacuum and the jury has the right to have the offense placed in its
proper setting so that all evidence may be realistically evaluated. Rarely
will the prejudicial value render inadmissible any evidence that is in
context of the offense. Mann v. State, 718 S.W.2d 741, 743-4 (Tex.
Crim. App. 1986).

 Appellant next complains of the court's permitting the introduction
of hearsay in several instances. The court allowed an officer to testify
that he was told that gun powder residue was found on appellant's
hands as the result of a scientific test. This occurred during a pre-trial
hearing and was not heard by the jury. We presume that the trial court
disregarded all improper evidence. Jimenez v. State 739 S.W2d 499,
503 (Tex. App. -- Corpus Christi 1987, pet ref'd). 

 The next hearsay complaint is stated in appellant's brief as
follows: "another example of hearsay came when the state sought to
introduce what a person who the state contended was the defendant
said." This is followed by a volume and page reference. The record
reveals that this person was a man named Noe Figueroa (appellant) 
who told an officer that blood found at the scene of the shooting was
the result of a dog being run over. The statement about the dog being
run over was not true and was obviously not offered for the truth of the
matter asserted. In addition see Texas Rules of Evidence rule
801(e)(2)(A) which declares that a party's own statement used against
him in court is not hearsay. 

 Appellant alleges error in the introduction of an out of court
statement made by Washington, the eyewitness to the shooting, to an
investigative officer, Alfredo Lara. The statement identified appellant as
the person who shot the deceased. It was offered as an excited
utterance by the state. When the first hearsay objection was made the
court sustained it. After hearing the following testimony, the court
allowed the testimony to be heard by the jury:

Q Did Samuel Washington walk up to you calmly? What
were his actions?

A He didn't walk up calmly. He was nervous and excited
. . . . 

Q What did Samuel Washington say?

A Samuel approached me and told me that the faggot
had shot him and that it was Noe. It was Noe. Noe
was the one that shot him. 

Q Then what happened?

A Then I tried to calm him down. He was all excited and,
you know, nervous and everything. I noticed that he
had blood on his hands and clothing. And I said, well. 

Q Who?

A Samuel Washington.

Q Okay.

A I told him, "Calm down. Calm down. Talk to me and
slow down. I can't make out what you're saying. Talk
to me real slow."

Q And this is all happening within a matter of minutes
from your initial call?

A Yes, sir.


The trial court's overruling the objection was proper under the
circumstances.

 The same officer whose testimony was admitted as an excited
utterance, discussed in the preceding paragraph, later testified, over
objection, that he made contact with his lieutenant and the lieutenant
"made contact with a witness and he identified . . . Mr. Figueroa as the
shooter." In view of the previous testimony of Mr. Lara, together with
appellant's confession, no harm could have come to appellant as a
result of this later statement.

 The next "hearsay complaint" is stated as follows: "a fifth example
occurred when an officer related what a witness told him he saw. The
Court sustained the objection, although the cat wasn't in the bag." The
reference is to the reply of Officer Lara, "I believe that an elderly female
by the name of Ms. Carlson, I believe, she was the only one that could
-- that I can remember at this point. She indicated that she heard some
type of loud noise that she glanced outside her window and didn't see
anything." The court sustained the objection. No request was made
by appellant for an instruction or a mistrial. There is no error. 

 Appellant's next complaint states, in its entirety, "The sixth
example concerned a statement made at the scene." This is followed
by a volume and page reference to the record. The complaint is
probably to:

A. He advised us - - 

 The Court: When you say "he," who do you mean?

 WITNESS: Noe Figueroa advised us because we
asked him where is the man down. And he advised us
that a dog had - - that somebody had run over a dog. 
We looked over and along the pavement and where the
beginning of the cement of the driveway there was
some blood, a blood stain. 


A statement offered against a party which is the party's own statement
is not hearsay by virtue of rule 801 of the Texas Rules of Evidence. 

 The final "hearsay complaint" refers to an answer by one of the
officers to a question about what the third person present when the
shooting occurred said when the officer first arrived at the scene. First,
the officer testified that this person was "just scared, and you know,
just yelling out, you know making outbursts." The answer objected to
as hearsay was "the faggot shot him. The faggot shot him." This was
obviously an excited utterance and, thus, an exception to the hearsay
rule.

 The last matter cited under point number six is the assertion that
appellant's written statement, first cited as error earlier because it was
alleged to be the fruit of an illegal arrest, was also erroneously admitted
because it was not freely made.(4) The reason given for this claim of
coercion is that appellant's clothes had been removed and appellant had
then been left in an air conditioned cell. The foregoing claim of coercion
has no support in the record. The only reference to appellant having
been abused occurred in the form of defense counsel's questions
attempting to prove this fact, and his argument.

 There is no error in the last complaint made as part of point of
error number six. The entire point of error is overruled.

 Point of error seven alleges error in the court's denying appellant
jury charges on lesser offenses, to wit, aggravated assault and
criminally negligent homicide. He also complains that he was denied
charges on "illegally obtained evidence" and "confession charge." Point
number eight alleges denial of due process because the overall effect of
the charge was to deny defendant a fair trial. These points are
presented together and we will consider them together.

 The law requires that both prongs of a two part test be met in
order to justify giving a charge on a lesser included offense. In
Rousseau v. State, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993), the
court reaffirmed the Royster test(5) to be, "first, the lesser included
offense must be included within the proof necessary to establish the
offense charged, and, second, some evidence must exist in the record
that if the defendant is guilty, he is guilty only of the lesser offense." 

 All the evidence in the record concerning how the shooting took
place, even appellant's own statement, is that appellant deliberately
pointed a gun at the victim then shot him. Murder requires that a
person intentionally or knowingly causes the death of an individual or
intends to cause serious bodily injury and commits an act clearly
dangerous to human life that causes the death of an individual.(6) The
Royster test will not justify the inclusion of either criminally negligent
homicide or aggravated assault in this case as lesser included offenses
from any reading of the facts.(7)
 

 We have a very difficult time coming to grips with the latter two
sections of the refusal to charge issue, ie, that the confession was not
freely and voluntarily made because of the use of marijuana and the
"38.23 instruction." We do not know whether appellant refers to the
written statement or any oral statement made to the investigating
officers. If he refers to his written statement, we note that the
undisputed testimony shows that at least fifteen hours lapsed between
the marijuana smoking and the taking of the statement. Appellant
offers no authority to support this point nor to a citation to the record
to show that the instruction was requested and denied. We remind
appellant that the right to appellate review extends only to complaints
made in accordance with our rules of appellate procedure. Heiselbetz
v. State, 906 S.W.2d 500, 512 (Tex. Crim. App. 1995); Foster v. State
779 S.W.2d 845, 864 (Tex. Crim. App. 1989). As to appellate's
complaint that he was denied a "38.23 instruction" we assume he
refers to Texas Code of Criminal Procedure Article 38.23 which
provides:

Evidence Not to be Used


 No evidence obtained by an officer or other person in
violation of any provisions of the Constitution or laws of the
State of Texas, or of the Constitution or laws of the United
States of America, shall be admitted in evidence against the
accused on the trial of any criminal case. 


 In any case where the legal evidence raises an issue
hereunder, the jury shall be instructed that if it believes, or
has a reasonable doubt, that the evidence was obtained in
violation of the provisions of this article, then and in such
event, the jury shall disregard any such evidence so
obtained.


Tex. Code Crim. Proc., art. 38.23 (Vernon 1979). Again, appellant has
not briefed this issue and we decline to brief it for him. He cites no
evidence heard by the jury to show that his statement was not freely
and voluntarily given. We overrule points of error seven and eight.

 Appellant's ninth, and final point of error complains of the manner
in which the state's attorney conducted voir dire examination of the jury
panel as to appellant's fifth amendment right to not testify and on the
question of insanity. After the judge had instructed the panel that
appellant had a constitutional right to not testify, the state's attorney
asked the panel:

My question is: if the defendant chooses to testify, you are
to consider his credibility just as you are any other witness. 
How many of you-all would agree that between myself, the
other prosecutor Trevino, the judge, defense counsel, and
prospective jurors and witnesses, who has the most to lose
in this trial?


Several jurors responded, "the defendant." The judge sustained a
defense objection to the question and instructed the panel to disregard
the question. He denied a motion for mistrial.

 Appellant's reliance on Grifften v. California 380 U.S. 609 (1965)
and Patrick v. State, 906 S.W.2d 481 (Tex. Crim. App. 1995), is well
taken on the fundamental proposition that a prosecutor may not
comment on a defendant's refusal to testify. However, an examination
of the prosecutor's statement indicates that this is not what she said or
meant. At the time the prosecutor asked the question complained of,
she did not know if appellant would take the stand or not. The question
appears to us to inquire whether if appellant took the stand the jurors
would judge his veracity from the standpoint of what he had to gain or
lose from being truthful. Certainly in this context, the question is not
a comment on appellant's failure to testify because appellant has not
yet made that decision. The questions only asks the jury to evaluate
appellant's bias if indeed he does testify. This is not a comment on
appellant's failure to testify and it was not error to ask the question. In
any event, the jury was instructed to disregard the question. 

 The second part of this point of error is stated in pertinent part as,
"the trial court erred in allowing the state to improperly voir dire on: B.
insanity." The brief then refers us to volume 5 page 101 of the record.
Here we find:

[By the Prosecutor:] How many of you-all would agree that
some people suffer from mental illness and they may be
need - - they may need psychiatric treatment or some type
of treatment? Does that mean that they're insane, but they
didn't know what they were doing whether it was right or
wrong?


[By Defense Counsel at Trial:] Excuse me, Your Honor. 
Again it's an attempt to bind. It's improper voir dire.


[The Court:] It's overruled. Let's go.


 Again, we are cited to no authority to indicate that the statement
made or the court's ruling were incorrect. We find no error. Point of
error nine is overruled.

 We AFFIRM the judgment of the trial court.

 NOAH KENNEDY

 Justice


Do not publish.

Tex. R. App. P. 47.3.


Opinion delivered and filed

this 31st day of August, 2000.

 

1. Retired Justice Noah Kennedy assigned to this Court by the Chief
Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann.
§74.003 (Vernon 1998).

2. A test designed to detect the presence of gun powder on the
hands or clothing of a suspect.
3. Tex. Code Crim. Proc. App. Ann. art. 37.07 (Vernon 1999)
4. Appellant also complains that the statement is not accurate
because of things left out. His cite to the record does not bear this out
because he cites pages 156 and 174 of volume 2 of the record. Page
156 contains counsel's argument concerning the complaint. He argues
to the trial court: "his statement is not trustworthy because it is a
question and answer statement wherein the witness who took the
statement indicated that he left some material out." Counsel offers no
proof of this or of what was left out. There is no page 174 in volume 2. 
Rule 38.1(h) of the Texas Rules of Appellate Procedure states: the brief
must contain a clear and concise argument for the contention made,
with appropriate citations to authorities and to the record. Tex. Rules
App. Proc. Ann (Vernon Special pamphlet 1999).
5. Royster v. State, 622 S.W.2d 442 ( Tex. Crim. App. 1981).
6. Tex. Penal Code Ann Sec. 1902 (Vernon 1994).
7. Criminally negligent homicide is defined in the Penal Code as: "A
person commits an offense if he causes the death of an individual by
criminal negligence. Tex. Penal Code Ann. Sec. 19.05 (Vernon 1984). 
 
 

 Aggravated assault is defined as: "causes serious bodily injury to
another. . . or uses or exhibits a deadly weapon during the commission
of the assault." Tex. Penal Code Ann. Sec. 22.02.