**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff - Appellee*,

v.

JEROME DANIEL MANCUSO,
*Defendant - Appellant.*

No. 12-30174

D.C. No.
1:10-cr-00100-
RFC-1

UNITED STATES OF AMERICA,
*Plaintiff - Appellant*,

v.

JEROME DANIEL MANCUSO,
*Defendant - Appellee.*

No. 12-30201

D.C. No.
1:10-cr-00100-
RFC-1

OPINION

Appeal from the United States District Court
for the District of Montana
Richard F. Cebull, Senior District Judge, Presiding

Argued and Submitted
March 6, 2013—Portland, Oregon

Filed May 1, 2013

Before: Richard R. Clifton and Carlos T. Bea, Circuit
Judges, and James C. Mahan, District Judge.[*]

Opinion by Judge Bea

---

**SUMMARY**[**]

---

**Criminal Law**

The panel affirmed in part and reversed in part the district
court's judgment, reversed the district court's denial of the
government's forfeiture request, and remanded for further
proceedings in a case in which the defendant, a dentist, was
convicted on one count of possession of cocaine with intent
to distribute (21 U.S.C. § 841(a)(1)), one count of distribution
of cocaine (§ 841(a)(1)), and two counts of maintaining a
drug-involved premises (21 U.S.C. § 856(a)(1)).

The panel rejected the defendant's contentions that three
counts alleged acts outside of the statute of limitations period,
that two counts were multiplicitous, and that the indictment
failed to provide constitutionally-required notice. The panel
also rejected the defendant's claims of constructive
amendment and duplicity as applied to three counts which
properly charged the defendant with the continuing offenses
of possessing cocaine with intent to distribute or maintaining

---

[*] The Honorable James C. Mahan, District Judge for the U.S. District
Court for the District of Nevada, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

a drug-involved premises. The panel vacated the distribution count because it was duplicitous in that it joined two or more distinct and separate offenses into a single count.

The panel vacated the convictions for maintaining drug-involved premises because the district court committed plain error by utilizing a "significant purpose" instruction rather than a "primary or principal use" instruction. The panel held that the reasoning underlying the "primary or principal use" requirement in the residential context, set forth in *United States v. Shetler*, 665 F.3d 1150 (9th Cir. 2011), applies with equal force to a dental office.

The panel rejected the defendant's challenge to the district court's drug quantity calculation at sentencing and its determination that the defendant did not qualify for a minor role reduction pursuant to U.S.S.G. § 3B1.2.

On the government's cross-appeal, the panel reversed the denial of the government's forfeiture motion. The panel held that the district court's failure to inquire before the jury began deliberating whether either party requested a jury determination on the nexus between the property sought and the crime, as required by Fed. R. Crim. P. 32.2(b)(5)(A), was harmless.

**COUNSEL**

Michael W. Meyrick (argued), Law Offices of Michael Meyrick, P.C., Canon City, Colorado, for Defendant-Appellant/Appellee.

J. Bishop Grewell (argued) and Michael W. Cotter, United States Attorney's Office, Billings, Montana, for Plaintiff-Appellee/Appellant.

## OPINION

BEA, Circuit Judge:

Jerome D. Mancuso appeals his convictions and sentence imposed for one count of possession of cocaine with intent to distribute, one count of distribution of cocaine, and two counts of maintaining a drug-involved premises. The government cross-appeals the district court's denial of forfeiture of the seized equity from the sale of Mancuso's home. We have jurisdiction pursuant to 18 U.S.C. § 1291, and we affirm his conviction on Count I, vacate his convictions on Counts II, III, and IV, and remand for further proceedings consistent with this opinion. We also reverse the district court's denial of the government's forfeiture request and remand for further forfeiture proceedings.

## Facts and Procedural History

Mancuso was a dentist who distributed a lot more than free toothbrushes to his friends and acquaintances in Billings, Montana. On August 23, 2010, he was charged with several crimes relating to cocaine possession and distribution. Counts One and Two of the indictment read as follows:

### COUNT ONE

That between on or about January 1, 2002, and continuing thereafter until on or about the

end of July 2009, at Billings, in the State and District of Montana, the defendant, JEROME DANIEL MANCUSO, did knowingly and unlawfully possess with intent to distribute over 500 grams of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

### COUNT TWO

That between on or about January 1, 2002, and continuing thereafter until on or about the end of July 2009, at Billings, in the State and District of Montana, the defendant, JEROME DANIEL MANCUSO, did knowingly and unlawfully distribute over 500 grams of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

Count Three of the indictment charged Mancuso with knowingly using or maintaining a place (his home) for the purpose of unlawfully distributing and using cocaine in violation of 21 U.S.C. § 856(a)(1), and Count Four charged him with the same offense with respect of his dental office. Mancuso was also charged with using a communication facility to facilitate his drug crimes in violation of 21 U.S.C. § 843(b), but he was acquitted of that count and it is not at issue in this appeal. Finally, the indictment contained a forfeiture count, seeking the equity from the sale of Mancuso's home in the amount of $160,524.33.

Before trial, Mancuso moved to dismiss various counts in the indictment. He moved to dismiss Counts I–III because

they were barred by the statute of limitations,[1] Counts I–V because they were duplicitous,[2] Counts I–II for failure to provide constitutionally required notice, and Counts I–II because they were multiplicitous.[3]

The district court denied the motion to dismiss based on the statute of limitations, concluding that even though the indictment alleged violations over a period of seven and a half years, acts outside of the statute of limitations could be introduced as either evidence of prior similar bad acts or as part of a common scheme or design. It denied the motion regarding duplicity, noting that "a defendant indicted pursuant to a duplicitous indictment may be properly prosecuted and convicted if either (1) the government elects between the charges in the offending count, or (2) the court provides an instruction requiring all members of the jury to agree as to which of the distinct charges the defendant actually committed."  The district court denied the motion regarding notice, finding that the indictment was sufficient in that the defendant could read and understand the offenses charged in Counts I and II, and that there was no requirement for an indictment to include theories of prosecution or anticipated evidence.  Finally, the district court denied the

---

[1] 18 U.S.C. § 3282 provides that the applicable statute of limitations to these offenses is five years.

[2] An indictment is duplicitous when it joins two or more distinct and separate offenses into a single count. *See United States v. UCO Oil Co.*, 546 F.2d 833, 835 (9th Cir. 1976).

[3] "An indictment is multiplicitous when it charges multiple counts for a single offense, producing two penalties for one crime and thus raising double jeopardy questions." *United States v. Stewart*, 420 F.3d 1007, 1012 (9th Cir. 2005).

motion regarding multiplicity, noting that in the event the court found that the indictment was multiplicitous, it would remedy the defect at the appropriate time.

Mancuso then moved for a bill of particulars, seeking specific information concerning the dates and places that he was alleged to have possessed cocaine with intent to distribute, and occasions when he was alleged to have distributed cocaine, including identification of any witnesses to such transactions. The district court denied the motion, stating that the prosecution's theory of the case was clear from the indictment and that full discovery[4] would obviate the need for a bill of particulars.

At trial, nine different witnesses testified about occasions where they supplied cocaine to Mancuso, received cocaine from Mancuso, or consumed cocaine with Mancuso. For example, Timothy Loudan testified that he began supplying Mancuso with cocaine in 2006 or 2007, and that Mancuso would usually buy an eighth of an ounce to two eighths of an ounce at a time. Loudan testified Mancuso shared cocaine with him anywhere from 10–25 times[5] at Mancuso's office, and Mancuso shared cocaine with Loudan at Mancuso's home and other locations on other occasions (i.e., bars, restaurants, golf courses, and ski resorts). Loudan also testified about an incident in which he allegedly observed Mancuso pick up a 32-ounce Big Gulp cup containing cocaine by the side of the road. Loudan and other witnesses

---

[4] Mancuso does not claim that he was denied full discovery.

[5] Loudan initially estimated that Mancuso had given him cocaine 10–15 times in his office, but upon further questioning estimated that it was 20–25 times.

testified that Mancuso's catchphrase was "I'll buy and you fly," apparently referring to Mancuso's practice of purchasing cocaine and sharing it with his friends, dealers, and acquaintances.

On October 7, 2011, the jury found Mancuso guilty of Counts I–IV, and acquitted Mancuso on Count V (using communication facilities to facilitate drug crimes). The jury further found the amounts distributed and possessed with intent to distribute to be less than 500 grams. Also on that date, after the jury verdict was read, the following exchange took place during a sidebar:

> [Government counsel]: I apologize for interrupting. There has not been a demand for jury trial; therefore, the forfeiture portion of the trial, the jury is waived. I just want to point that out. So then the forfeiture will be your decision. I wanted to make sure procedurally –
>
> The Court: I know that's the case.
>
> [Defense counsel]: Understood.
>
> [Government counsel]: Thank you.

On May 4, 2012, the district court held a forfeiture hearing. The district court judge noted that he had been unaware of a recent addition to Federal Rule of Criminal Procedure 32.2. The amended rule provides, "In any case tried before a jury, if the indictment or information states that the government is seeking forfeiture, the court must determine before the jury begins deliberating whether either

party requests that the jury be retained to determine the forfeitability of specific property if it returns a guilty verdict." Fed. R. Crim. P. 32.2(b)(5)(A). The district court noted that in this case he had failed to determine whether either party requested a jury verdict as required by the amended rule on the forfeitability of the equity realized when Mancuso sold his house. The district court therefore declined to grant forfeiture.

Also on May 4, 2012, the district court held a sentencing hearing. The pre-sentence investigation report ("PSR") provided a guideline range of 41–51 months for Mancuso, based on a drug amount of 376.41 grams and a criminal history category I. The PSR author calculated the drug amount by attributing 752.66 grams of cocaine to Mancuso (an amount derived from adding together the amounts described by all of the witnesses) and then dividing that amount by half to account for the amount of cocaine that Mancuso likely consumed personally. Mancuso raised two objections to the PSR that are relevant to the present appeal: he objected to not receiving a reduction for being a minor participant, and he objected to the drug quantity. The district court overruled the first objection, noting that Mancuso had to be "substantially less culpable than the average participant in order to qualify for the reduction." It concluded that Mancuso's conduct did not meet that standard.

The district court held a hearing on the drug amount, during which the government and Mancuso each presented expert witnesses. Mancuso's expert, a former Drug Enforcement Administration ("DEA") agent, stated that after reviewing the trial testimony, his opinion was that "Dr. Mancuso could not have shared more than 10 to 12 grams of cocaine back to those who distributed to him." The expert

further stated that the pattern of Mancuso's drug use "seems to be consistent with what the drug trade does in drug transactions. If a dealer brings you an 8-ball of cocaine, and you are gratuitous in tipping him or sharing with him a line or two, that would be consistent . . . ."

The government's expert, a current DEA agent, testified that he did not find any fault with the drug amount calculations made by the PSR author. The government expert explained that the DEA's policy was to charge the full drug amount, but that in this case, the government was "trying to take a nicer role towards Dr. Mancuso and say, well, if he was using quite a bit of it . . . ." He later reiterated, "DEA's policy is we charge 100 percent. The person that's doing the report took half of it. That was just being nice."

The district court found that the PSR writer's drug calculation was accurate except for the 4 ounces (113.4 grams) attributable to the 32-ounce Big Gulp cup that Tim Loudan had testified about during trial. Specifically, the district court stated that it did not "give much credence" to Tim Loudan's trial testimony about the Big Gulp cup incident, and therefore subtracted the amount attributable to the Big Gulp cup from the total drug amount. The district court further found that the PSR had given Mancuso "a significant benefit of the doubt." After subtracting 113.4 grams from the PSR's drug quantity of 376.41 grams to account for the amount attributable to the Big Gulp cup, the district court calculated that Mancuso was responsible for distributing 263.01 grams of cocaine, resulting in a base offense level of 20. It noted that it was "at a loss to explain the findings by [the defense] expert of 10 to 12 grams." With a base offense level of 20 and a criminal history category I, the guideline range for Mancuso was 33–41 months. The

district court ultimately applied a downward variance in light of Mancuso's "outstanding record of service to the country" and his potential to continue to be an "outstanding doctor," and sentenced Mancuso to 16 months imprisonment. These appeals followed.

**Analysis**

## I. Challenges to the Indictment

Mancuso raises a number of challenges to the indictment on appeal. He claims that the indictment was constructively amended, that the indictment was defective because Counts I–III alleged acts outside of the statute of limitations period, that it was duplicitous as to all counts, that Counts I and II were multiplicitous, and that it failed to provide the constitutionally required notice. We reject all of these challenges except for Mancuso's claim that Count II, which charged him with a single continuing offense of actual distribution, was duplicitous. As to that count, we hold that Count II was duplicitous because it joined two or more distinct and separate offenses into a single count, and we therefore vacate Mancuso's conviction on Count II.

### A. Standard of Review

In general, the adequacy of an indictment is reviewed *de novo*. *United States v. Renteria*, 557 F.3d 1003, 1006 (9th Cir. 2009). This court reviews *de novo* allegations that the indictment was constructively amended. *United States v. Pang*, 362 F.3d 1187, 1193 (9th Cir. 2004). Whether an indictment is duplicitous is also reviewed *de novo*. *United States v. Ramirez-Martinez*, 273 F.3d 903, 913 (9th Cir. 2001), *overruled on other ground by United States v. Lopez*,

484 F.3d 1186 (9th Cir. 2007).  The claim that an indictment has resulted in multiplicitous convictions is reviewed *de novo*. *United States v. Stewart*, 420 F.3d 1007, 1012 (9th Cir. 2005).

## B.  Notice, Statute of Limitations, and Multiplicity

We address briefly Mancuso's notice, statute of limitations, and multiplicity claims to explain why these claims are unavailing.

**1.** Mancuso argues that the indictment provided insufficient notice of the offenses charged in Counts I and II because the language of the indictment merely recited the language of the statute, but failed to allege how the violation was committed or with whom.  "An indictment must provide the essential facts necessary to apprise a defendant of the crime charged; it need not specify the theories or evidence upon which the government will rely to prove those facts." *United States v. Cochrane*, 985 F.2d 1027, 1031 (9th Cir. 1993).  The Supreme Court has stated, "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'"  *Hamling v. United States*, 418 U.S. 87, 117 (1974) (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)).  We find that the indictment in Mancuso's case was sufficient to notify him that he was charged with possessing cocaine with intent to distribute and with actual distribution; he was not entitled at the time of his indictment to know all of the evidence the government would use to prove the charges against him.  We therefore reject his "insufficient notice" claim.

**2.** Mancuso argues that the indictment improperly included charges beyond the applicable five-year statute of limitations because Counts I, II, and III alleged violations spanning a period of seven and a half years. We have held that the statute of limitations does not bar the introduction of evidence of acts that occurred outside of the limitations period. *United States v. Baker*, 10 F.3d 1374, 1410 (9th Cir. 1993), *overruled on other grounds by United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000). In this case, the district court instructed the jury as follows:

> The statute of limitations on these charges is five years. Therefore, any quantity of drugs possessed and/or distributed by Defendant prior to August 23, 2005 cannot be considered by you as evidence of guilt of the crimes charges in Counts I–V for which Defendant is not on trial.

In the present case, the instruction to the jury mitigates any concerns that Mancuso was found guilty for events occurring outside of the statute of limitations. We therefore reject Mancuso's statute of limitations claim.

**3.** Mancuso argues that Count I (possession with intent to distribute) and Count II (actual distribution) are multiplicitous because they cite the same statute and subsection, 21 U.S.C. § 841(a)(1), in support of the violation claimed in each, and the government relied on the same witnesses, events, and conduct to prove guilt on each count. An indictment is multiplicitous when it charges multiple counts for a single offense, thereby resulting in two penalties for one crime and raising double jeopardy concerns. *See Stewart*, 420 F.3d at 1012. However, "two counts within an

indictment are not multiplicitous if 'each separately violated statutory provision requires proof of an additional fact which the other does not.'" *Id.* (quoting *United States v. Vargas-Castillo*, 329 F.3d 715, 718–19 (9th Cir. 2003)).

This court's decision in *United States v. Palafox*, 764 F.2d 558 (9th Cir. 1985) (en banc), demonstrates that in some limited circumstances it is incorrect to charge and sentence a defendant on separate counts of possession with intent to distribute and actual distribution. In *Palafox*, the defendant met with an undercover agent to sell a package of heroin. *Id.* at 559. The agent asked the defendant for a sample of heroin, took a small quantity, and returned the package to the defendant. *Id.* The defendant was then arrested and charged with distribution of the .12 gram sample, and possession of the remaining 124.58 grams with intent to distribute. *Id.* He was convicted of both counts and sentenced to concurrent terms of five years on each count. This court, sitting en banc, held that "where the defendant distributes a sample and retains the remainder for the purpose of making *an immediate distribution to the same recipients at the same place and at the same time*, verdicts of guilty may be returned on both counts but the defendant may be punished on only one." *Id.* at 560 (emphasis added). However, this court further noted that the delivery of a sample could be a separate punishable offense in other circumstances, such as when an individual "makes distributions, sample or otherwise, to two different individuals as part of two separate transactions." *Id.* at 563.

The record in this case does not support a finding that, as in *Palafox*, Mancuso distributed samples and retained the remainder for immediate distribution to the same recipients at the same place at the same time. Instead, his convictions for possession with intent to distribute and actual distribution

"require[d] proof of an additional fact which the other [did] not."[6]  *Stewart*, 420 F.3d at 1012.  We therefore reject his multiplicity challenge to Counts I and II.

## C.  Constructive Amendment and Duplicity

Mancuso's constructive amendment and duplicity claims require more analysis.[7]  We have held that "constructive amendment occurs when the defendant is charged with one crime but, in effect, is tried for another crime."  *Pang*, 362 F.3d at 1194.  This court has found constructive amendment of an indictment where "(1) there is a complex of facts presented at trial distinctly different from those set forth in the charging instrument, or (2) the crime charged in the indictment was substantially altered at trial, so that it was impossible to know whether the grand jury would have

---

[6] In this case, the required elements for Count I, possession with intent to distribute, are: "(1) the defendant knowingly possessed the controlled substance; and (2) the defendant possessed the controlled substance with the intent to deliver it to another person."  *United States v. Vargas-Castillo*, 329 F.3d 715, 719 (9th Cir. 2003).  Therefore, the additional fact that the government had to prove in order to convict on Count I was that Mancuso had the requisite intent to deliver cocaine.  In order to convict on Count II, the additional fact that the government had to prove was that Mancuso actually distributed cocaine.

[7] Mancuso's "constructive amendment" and duplicity claims overlap significantly, so we address them jointly.  For instance, his "constructive amendment" claim amounts to an argument that even though the indictment charged a single and "continuing" crime in each count, the jury was presented with evidence from nine different witnesses who testified about multiple and unrelated occasions where Mancuso shared cocaine with them, while he claims in support of his duplicity claim that "despite the fact that the indictment alleged a single and continuing substantive offense in each count, it used multiple witnesses to testify about unrelated occasions when Mancuso shared cocaine with them."

indicted for the crime actually proved." *United States v. Adamson*, 291 F.3d 606, 615 (9th Cir. 2002) (internal quotations omitted).

An indictment is duplicitous when it joins two or more distinct and separate offenses into a single count. *UCO Oil Co.*, 546 F.2d at 835. "In reviewing an indictment for duplicity, our task is not to review the evidence presented at trial to determine whether it would support charging several crimes rather than one, but rather solely to assess whether the indictment itself can be read to charge only one violation in each count." *United States v. Martin*, 4 F.3d 757, 759 (9th Cir. 1993) (internal quotations omitted).

**1.** We reject Mancuso's claims of constructive amendment and duplicity as applied to Counts I, III, and IV of the indictment, which properly charged Mancuso with the continuing offenses of possessing cocaine with intent to distribute or maintaining a drug-involved premises. Under the caselaw from the Ninth Circuit and other circuits, "possession with intent to distribute [controlled substances] is a continuing offense." *United States v. Pariseau*, 685 F.3d 1129, 1131 (9th Cir. 2012); *see also United States v. Zidell*, 323 F.3d 412, 422 (6th Cir. 2003) (collecting cases establishing that possession with intent to distribute controlled substances is a continuing offense.); *United States v. Muhammad*, 502 F.3d 646, 653 (7th Cir. 2007) (same). "A continuing offense is a continuous, unlawful act or series of acts set on foot by a single impulse." *United States v. Midstate Horticulture Co.*, 306 U.S. 161, 166 (1939). Similarly, the offense of "maintaining" a place for the use or distribution of drugs in violation of 21 U.S.C. § 856(a)(1) is a continuing one, as the crime begins when a person begins maintaining a place for such purposes and continues until the

person ceases to maintain the place for those reasons. "The continuous nature of [an offense] prevents the indictment from being duplicitous." *United States v. Anderson*, 605 F.3d 404, 415 (6th Cir. 2010).

Mancuso argues that the form of the indictment, as well as the trial court's failure to give a specific unanimity jury instruction, deprived him of a unanimous verdict because this court cannot discern whether the jury unanimously agreed that he possessed cocaine with intent to distribute to all nine witnesses, or whether some jurors credited some witnesses but not others. Ordinarily, the "general unanimity instruction suffices to instruct the jury that they must be unanimous on whatever specifications form the basis of the guilty verdict." *United States v. Lyons*, 472 F.3d 1055, 1068 (9th Cir. 2007) (quoting *United States v. Kim*, 196 F.3d 1079, 1082 (9th Cir. 1999)). However, a specific unanimity instruction[8] is required if there is a "genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed different acts." *Lyons*, 472 F.3d at 1068 (internal quotations omitted). In this case, the "acts" in question were the continuing offenses of possessing with intent to distribute and maintaining a home or business for the purposes of drug activities. It does not matter that different jurors may have found different pieces of testimony credible, as long as the jury is unanimous on the bottom line conclusion that Mancuso was guilty of the acts charged. *See Schad v. Arizona*, 501 U.S. 624, 631–32 (1991) ("We have never suggested that in returning general verdicts

---

[8] A specific unanimity instruction could be given by the district court including the phrase "with all of you agreeing [as to the particular matter requiring unanimity]" in the substantive jury instructions. *See* Ninth Circuit Model Criminal Jury Instructions 7.9, Specific Issue Unanimity.

in such cases the jurors should be required to agree upon a single means of commission . . . In these cases, as in litigation generally, different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict.") (internal quotations omitted). For these reasons, we reject Mancuso's constructive amendment and duplicity claims as applied to Counts I, III, and IV of the indictment.

**2.** Mancuso's duplicity claim with respect to Count II, which charged him with a single continuing offense of distributing cocaine between January 1, 2002, and July 2009, is much stronger. Unlike possession of controlled substances with intent to distribute, it is unclear whether actual distribution may be charged as a continuing offense. This circuit has never addressed directly whether distribution is a continuing offense, although other courts have held that it is not. For example, the Second Circuit has stated:

> Under [21 U.S.C. § 841], the term "distribute" means "to deliver," and the term "deliver" means "the actual, constructive, or attempted transfer of a controlled substance." 21 U.S.C. § 802(8), (11). The plain language of the statute indicates, therefore, that illegal distribution under § 841 is not a continuing crime. The law instead makes each unlawful transfer a distinct offense. Courts resolving this issue have uniformly held that separate unlawful transfers of controlled substances are separate crimes under § 841, even when these

transfers are part of a continuous course of conduct.

*United States v. Lartey*, 716 F.2d 955, 967 (2d Cir. 1983). We agree with the reasoning of the Second Circuit: separate acts of distribution of controlled substances are distinct offenses under 21 U.S.C. § 841(a), as opposed to a continuing crime, and therefore must be charged in separate counts.

The government argues that charging all of the acts of distribution in a single count was permissible because these acts "could be characterized as part of a single continuing scheme."   We disagree.   Mancuso's various acts of distribution to random friends and acquaintances, unassociated with each other in any venture or pursuit, over the course of several years and in various locations are not sufficiently related to justify charging him with one count alleging a continuing distribution offense, as opposed to with distinct counts for each act of distribution.  For these reasons, we vacate Mancuso's conviction on Count II on the grounds that it was duplicitous.

## II.  Jury Instructions

Mancuso was convicted of two counts of knowingly using or maintaining a place for the purpose of unlawfully distributing and using cocaine in violation of 21 U.S.C. § 856(a)(1).  Count III applied to his home, and Count IV applied to his dental office.  21 U.S.C. § 856(a)(1) provides that it shall be unlawful to "knowingly open, lease, rent, use, or maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance."

The district court instructed the jury that to convict Mancuso on these counts, it must find that "distribution or use of a controlled substance was a *significant purpose* for which the location was maintained or used." At the time of Mancuso's trial, there were competing formulations of the required level of "purpose" under this statute among the circuits. This circuit had not yet addressed the issue. The Tenth Circuit requires that in the residential context, "the manufacture (or distribution or use) of drugs must be at least one of the primary or principal uses to which the house is put." *United States v. Verners*, 53 F.3d 291, 296 (10th Cir. 1995). In contrast, the Fifth Circuit does not require that drug distribution be one of the *primary* purposes; it must be "a *significant* purpose" only. *United States v. Soto-Silva*, 129 F.3d 340, 346 n.4 (5th Cir. 1997) (emphasis added). The jury instruction in Mancuso's trial utilized the Fifth Circuit's formulation.

After Mancuso was convicted (but before he was sentenced), we published a decision that adopted the Tenth Circuit's interpretation of Section 856(a)(1) in the residential context. *See United States v. Shetler*, 665 F.3d 1150, 1162 (9th Cir. 2011). In *Shetler*, the defendant was convicted of maintaining his residence for the purpose of manufacturing, distributing, or using methamphetamine in violation of Section 856(a)(1). *Id.* at 1153. On appeal, Shetler claimed that the statute was void for vagueness as applied to him. *Id.* In addressing that claim, this court analyzed the scope of Section 856(a)(1), including "the type and degree of purpose connecting a defendant's use of property and his drug activities under § 856(a)(1)." *Id.* at 1161. It compared the formulations used by the Fifth and Tenth Circuits, and stated:

> To the extent that there is a meaningful difference between these various formulations, we agree with the Tenth Circuit that in the residential context, the manufacture (or distribution or use) of drugs must be at least one of the primary or principal uses to which the house is put. . . . Restricting the application of § 856(a)(1) to those individuals whose manufacture, distribution, or use of drugs in their residence constitutes one of the primary or principal purposes of their occupancy of that residence ensures that the statute does not extend beyond its intended coverage so as to encompass incidental drug use.

*Id.* at 1162 (internal quotations omitted). The relevant question is whether the use of the "significant purpose" jury instruction during Mancuso's trial warrants reversal of his convictions on Counts III and IV in light of this court's intervening decision in *Shetler*.

In the present case, because Mancuso did not object to the relevant jury instructions, plain error review applies. To notice error under Federal Rule of Criminal Procedure 52(b), this court must find that (1) there was "error," (2) it was "plain," and (3) the error affected "substantial rights." *United States v. Olano*, 507 U.S. 725, 732–35 (1993). If these conditions are met, then the court may notice the forfeited error only if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* at 736.

We begin with Mancuso's challenge as applied to Count III, which charged Mancuso with maintaining his home for drug-involved purposes. *Shetler* is directly on point, as we held in that case that "in the residential context, the manufacture (or distribution or use) of drugs must be at least one of the primary or principal uses to which the house is put" for a defendant to be convicted of violating Section 856(a). *Shetler*, 665 F.3d at 1162. It is therefore clear that the jury instructions were error, and that the error is plain at the time of appellate review. *See Henderson v. United States*, 133 S. Ct. 1121, 1130–31 (2013) (holding that "whether a legal question was settled or unsettled at the time of trial, it is enough that an error be plain at the time of appellate consideration for the second part of the four-part *Olano* test to be satisfied"). We also find that the error "was 'prejudicial' in the sense that it 'affected the outcome of the district court proceedings' in a manner that violated the substantive rights of the defendant," therefore fulfilling the third prong of the *Olano* test. *United States v. Recio*, 371 F.3d 1093, 1100 (9th Cir. 2004) (quoting *United States v. Jimenez-Dominguez*, 296 F.3d 863, 867 (9th Cir. 2002)). Unlike in other cases, where the Supreme Court and this court have upheld convictions on plain error review because of the strength of the evidence against the defendant,[9] we do not

---

[9] *See, e.g.*, *Johnson v. United States*, 520 U.S. 461, 469 (1997) (holding that because of the overwhelming evidence in the record, there was no basis for concluding that the instructional error in that case "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings") (internal quotations omitted); *United States v. Perez*, 116 F.3d 840, 847–48 (9th Cir. 1997) (en banc) (noting that in evaluating the final *Olano* prong, "we consider all circumstances at trial including the strength of the evidence against the defendant," and refusing to notice the jury instruction error in that case because on the record presented on appeal, "it [was] therefore extremely unlikely that, if properly instructed,

find that the evidence in Mancuso's case leads to the conclusion that he would have been convicted even if the jury had been instructed properly. Examining the record, we note that various witnesses testified about instances in which they consumed cocaine at Mancuso's home. Tim Loudan testified that Mancuso gave him cocaine at his home during a child's birthday party and while playing pool. Gary Kisthard testified that Mancuso gave him cocaine at his house two or three times. Jennifer Konen testified that Mancuso gave her cocaine at his home on one occasion. John Bonner testified that Mancuso gave him cocaine at his home once. Finally, both Blair Elliot and Laurent Zirotti testified that Mancuso gave them cocaine at his home on several occasions each. It is not at all clear that the evidence of these instances of distribution would be sufficient to pass the "principal use" formulation, and for that reason we vacate Mancuso's conviction on Count III and remand for a new trial on that count.

We now turn to Count IV. The government correctly notes that the *Shetler* holding was limited to the residential context. Count IV charged Mancuso of knowingly using or maintaining his dental office for the purpose of unlawfully distributing and using cocaine. We conclude that *Shetler*'s reasoning applies with equal force to Count IV of the indictment in this case, and the jury instructions as related to Count IV were plain error that affected Mancuso's substantial rights. The *Shetler* court noted that "Congress's primary

---

the jury would not have convicted [the defendants]"); *but see United States v. Alferahin*, 433 F.3d 1148, 1151 (9th Cir. 2006) (concluding that it was appropriate for the court to exercise its discretion to notice the plain error in the jury instructions, which omitted a required materiality element, because the evidence in the record "fell far short of proving materiality").

purpose in enacting § 856(a)(1) was to target those who use their property to profit from drug sale," *Shetler*, 665 F.3d at 1162, and that in a defendant's own home – which "is devoted principally to the ordinary activities of residential living" – the government must present "evidence beyond drug manufacture for personal use" in order to sustain a conviction under Section 856(a)(1). *Id.* at 1163. In the present case, Mancuso's office was "devoted principally to the ordinary activities" of running a dental practice. *Id*. The logic of requiring the government to prove that drug use, manufacture, or distribution was a "primary or principal purpose" of a place is therefore equally compelling when the place is a dental office. Extending the *Shetler* court's holding to Mancuso's dental office also comports with the language of the statute, which provides that it shall be unlawful knowingly to maintain "*any* place" for "*the* purpose of manufacturing, distributing, or using any controlled substance." 21 U.S.C. § 856(a)(1) (emphasis added); *see also Shetler*, 665 F.3d at 1162 (finding that the "primary or principal purpose" formulation "better comports with the statutory language, which proscribes only those drug activities that are '*the* purpose' to which the property is put") (internal citations omitted). Furthermore, although several witnesses testified that they consumed cocaine in Mancuso's office after hours, it is again not clear that the evidence in the record proved that cocaine use and/or distribution was a "primary or principal" purpose of Mancuso's dental office. For that reason, we exercise our discretion to notice the instructional error and vacate Mancuso's conviction on Count IV. We remand for a new trial on Count IV as well as Count III.

## III.    Sentencing Issues

Although we remand this case for further proceedings, which may require resentencing, we briefly discuss Mancuso's challenges to his sentence in case the same issues arise on remand.  Mancuso raises two separate issues on appeal: first, he challenges the drug quantity calculation; and second, he claims that the district court erred in refusing to grant a minor role adjustment.  We reject both of these arguments.

### A.  Drug Quantity

The district court determined that 263.01 grams was an accurate representation of the amount of cocaine distributed by Mancuso over a seven-year period.  Mancuso challenges the PSR author's decision to cut the total drug amount in half to account to cocaine consumed by Mancuso himself as "arbitrary," and further argues that amounts of cocaine that are purchased jointly and possessed by more than one person, with the intent to share it between the joint purchasers and possessors, should not be counted within the calculation of the amount distributed.  The determination of drug quantity involved in an offense under the Sentencing Guidelines is a factual finding reviewed for clear error.  *United States v. Asagba*, 77 F.3d 324, 325 (9th Cir. 1996).  However, "[w]hether the method adopted by the district court to approximate the relevant quantity of drugs is proper under the guidelines is . . . reviewed *de novo*."  *United States v. August*, 86 F.3d 151, 153 (9th Cir. 1996).

The applicable sentence range for drug offenses is pegged to the amount of drugs involved.  "Where the amount of drugs seized does not reflect the scale of the offense, the

district court may approximate the quantity of drugs." *United States v. Culps*, 300 F.3d 1069, 1076 (9th Cir. 2002); *see also* United States Sentencing Guidelines § 2D1.1, Application Note 5. This court has "approved various methods of approximation used by district courts to determine drug quantities even though the sentencing judge will not be able to arrive at the exact amount involved." *United States v. Scheele*, 231 F.3d 492, 498 (9th Cir. 2000). In *Culps*, this court outlined the following three criteria that approximations of drug quantities must meet:

> (1) "[T]he government is required to prove the approximate quantity by a preponderance of the evidence." *Culps*, 300 F.3d at 1076 (internal quotations omitted).

> (2) "[T]he information which supports an approximation must possess sufficient indicia of reliability to support its probable accuracy." *Id.* (internal quotations omitted). In other words, a drug approximation must have a "reliable evidentiary basis." *Id.* at 1077.

> (3) "[T]he district court must err on the side of caution in calculating approximated drug quantity." *Id.* at 1076 (internal quotations omitted).

Mancuso has not demonstrated that the drug amount calculation in his case failed any of the *Culps* criteria. The PSR author and the district court carefully combed through the testimony of the various witnesses in this case to approximate the amount of cocaine involved in Mancuso's

offenses.  The district court omitted from consideration drug amounts attributable to the 32-oz "Big Gulp" testified to by Tim Loudan because the court did not believe that amount had a reliable evidentiary basis.  Finally, the PSR and district court applied a 50% multiplier to give Mancuso the benefit of the doubt, notwithstanding the DEA's policy to charge 100% of the drug amount at issue, thereby satisfying the district court's duty to "err on the side of caution in calculating approximated drug quantity."  *Culps*, 300 F.3d at 1076.

Mancuso also relies on the Second Circuit case *United States v. Swiderski*, 548 F.2d 445 (2d Cir. 1977), to argue that any drugs that were jointly purchased and then shared among the joint purchasers should not be counted within the total drug quantity.  In *Swiderski*, Walter Swiderski and his fiancee Maritza De Los Santos each were convicted of one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1).  *Id.* at 447.  The record demonstrated that Swiderski and De Los Santos purchased cocaine from a supplier together.  *Id.* at 448.  The prosecutor argued during closing arguments that even if the two defendants purchased the cocaine with an intent to share it between themselves, that sufficed to establish possession "with intent to distribute."  *Id.* The judge instructed the jury that "distribution could be satisfied solely by a transfer between Swiderski and De Los Santos."  *Id.*  Swiderski and De Los Santos appealed, arguing that the district court erred in instructing the jury that the passing of the drug between the two defendants could constitution "distribution."  *Id.*  The Second Circuit agreed with Swiderski and De Los Santos, holding that "where two individuals simultaneously and jointly acquire possession of a drug for their own use, intending only to share it together, their only crime is personal drug abuse – simple joint possession, without any intent to distribute the drug further."

*Id.* at 450.  Even assuming the *Swiderski* rule was binding in the Ninth Circuit,[10] it would not apply to Mancuso's case, because the record does not support finding that any of the witnesses pooled money with Mancuso and traveled with him to acquire the cocaine jointly, intending only to share it together.  We therefore reject Mancuso's *Swiderski* argument.

**B.  Minor Role Adjustment**

Mancuso claims that the district court erred in failing to reduce Mancuso's base offense level by 2, 3, or 4 levels pursuant to Sentencing Guidelines § 3B1.2 based on the minor role he played in the overall scheme.  "A district court's finding that a defendant is not a minor participant in criminal activity is a factual determination reviewed for clear error."  *United States v. Rodriguez-Castro*, 641 F.3d 1189, 1192 (9th Cir. 2011).  This court has held that "a minor participant is one who plays a part in committing the offense that makes him *substantially less culpable* than the average participant."  *Id.* at 1193 (emphasis in original) (internal citations omitted).

Mancuso's argument in favor of the minor role reduction boils down to his claim that he was merely "an ultimate user who purchased cocaine for his personal use and occasionally shared some of that with friends and acquaintances."  This characterization of his role does not comport with the

---

[10] This court has never explicitly adopted the rule.  *See, e.g.*, *United States v. Wright*, 593 F.2d 105, 108 (9th Cir. 1979) (expressing no opinion as to whether the *Swiderski* rule was correct, but declining to apply it beyond cases "in which two individuals proceeded together to a place where they simultaneously purchased a controlled substance for their personal use").

evidence presented at trial that demonstrated his habit of bankrolling cocaine purchases if someone else would pick them up, and "sharing" cocaine generously at his home, his office, bars, ski resorts, etc. To the extent that Mancuso's claim depends on an argument that he merely "shared" cocaine with friends, that argument is meritless. It is well-established that "sharing" drugs "constitutes 'distribution' for purposes of 21 U.S.C. § 841(a)(1)," even if there is no commercial scheme involved. *United States v. Ramirez*, 608 F.2d 1261, 1264 (9th Cir. 1979). We therefore affirm the district court's determination that Mancuso did not qualify for a minor role adjustment.

## IV.    Forfeiture

The government cross-appeals the district court's denial of forfeiture. This court reviews *de novo* the district court's interpretation of federal forfeiture law. *See United States v. Kim*, 94 F.3d 1247, 1249 (9th Cir. 1996). We also review *de novo* the district court's interpretation and application of the Federal Rules of Criminal Procedure. *See United States v. Alvarez-Moreno*, 657 F.3d 896, 900 n.2 (9th Cir. 2011).

The government included a forfeiture count in the indictment, seeking forfeiture of $160,524.33, which represents the equity from the sale of Mancuso's home. The government sought forfeiture of these proceeds pursuant to 21 U.S.C. § 853(a)(2), which provides in relevant part that "[a]ny person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year *shall forfeit* to the United States . . . any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation." (emphasis added). This court stated in

*United States v. Liquidators of European Federal Credit Bank*, "[T]o achieve criminal forfeiture, the government first must prove, beyond a reasonable doubt, that the defendant is guilty of the crime. The government then must prove, by a preponderance of the evidence, a nexus between the property and the crime." 630 F.3d 1139, 1149 (9th Cir. 2011) (internal citation omitted).

Criminal forfeiture proceedings are governed by Federal Rule of Criminal Procedure 32.2.  Before 2009, the relevant portion of Rule 32.2 provided,

> *Upon a party's request* in a case in which a jury returns a verdict of guilty, the jury must determine whether the government has established the requisite nexus between the property and the offense committed by the defendant.

Fed. R. Crim. P. 32.2(b)(4) (2008) (emphasis added).  In 2009, the Rule was amended, and the relevant provision now provides:

> In any case tried before a jury, if the indictment or information states that the government is seeking forfeiture, *the court must determine before the jury begins deliberating whether either party requests* that the jury be retained to determine the forfeitability of specific property if it returns a guilty verdict.

Fed. R. Crim. P. 32.2(b)(5)(A) (2012) (emphasis added).  The Advisory Committee Notes on the 2009 Amendments make

clear that the amended rule places an affirmative duty on the court to determine whether "either party requests a jury determination of forfeiture in cases where the government has given notice that it is seeking forfeiture and a jury has been empaneled to determine guilty or innocence," and "[t]he rule requires the court to make this determination before the jury retires."

In the present case, the government properly concedes that the district court failed to follow the procedure outlined in Rule 32.2(b)(5)(A), but argues that any error was harmless. We agree. The purpose of the 2009 amendment was "to avoid an inadvertent waiver of the right to a jury determination, while also providing notice to the court and to the jurors themselves if they will be asked to make the forfeiture determination." Fed. R. Crim. P. 32.2 Advisory Committee Notes to the 2009 Amendments. Under the facts of this case, where Mancuso's attorney stated that she "understood" that the district court would make the forfeiture decision,[11] Mancuso did not "inadvertently" waive his right

---

[11] After the jury entered its verdict of guilty, the following exchange took place:

> [Government counsel]: I apologize for interrupting. There has not been a demand for jury trial; therefore, the forfeiture portion of the trial, the jury is waived. I just want to point that out. So then the forfeiture will be your decision. I wanted to make sure procedurally –
>
> The Court: I know that's the case.
>
> [Defense counsel]: Understood.
>
> [Government counsel]: Thank you.

to a jury determination of forfeiture. The failure of the district court to inquire before the jury began deliberating whether either party requested a jury determination on the nexus between the property sought and the crime was therefore harmless.

### Conclusion

For the foregoing reasons, we **AFFIRM** Mancuso's conviction on Count I, **AFFIRM** the district court's determination of the drug amount and refusal to grant a minor role adjustment, **VACATE** Mancuso's convictions on Counts II, III, and IV, and **REVERSE** the district court's denial of the government's forfeiture motion. This case is **REMANDED** to the district court for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**